## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER LISOWSKI, on behalf of
himself and all others similarly situated,

                Plaintiff,

      v.

WALMART STORES, INC., t/d/b/a
WALMART,

                Defendant.

Civil Action No. 2:20-cv-01729-NR

## DEFENDANT WALMART'S BRIEF IN SUPPORT
## OF ITS MOTION TO DISMISS

## INTRODUCTION

This is a *gotcha!* class action, manufactured to tag Walmart with huge statutory damages for charging sales tax on dietary supplements. According to the plaintiff, Mr. Lisowski, Walmart knowingly and deceptively charged sales tax on two "6-packs of 5-Hour Energy," hoodwinking him out of $1.88. ¶¶ 5-12, 21, 37.[1]  But Walmart didn't, of course, keep that money: it turned it over directly to the Commonwealth of Pennsylvania. 61 Pa. Code § 34.2(d).

As one federal court considering a similar claim aptly recognized, "it makes absolutely no sense for the Store to charge a higher [tax] rate than it legitimately thinks it is required to charge because it is not in its economic interest to do so." *Bartolotta v. Dunkin' Brands Group, Inc.*, 2016 WL 7104290, at \*9 (N.D. Ill. Dec. 6, 2016).  So it is here. Because it cannot keep taxes collected, it is in Walmart's interest to charge less, not more.  It collects sales tax only because Pennsylvania law requires it. 72 P.S. § 7237(b)(1).  And it turns those collections over to the Commonwealth, which provides a procedure for consumers to seek a refund if they believe they have been overcharged. 61 Pa. Code § 34.2(d); *see* 72 P.S. § 10003.1.  Yet rather than seek a refund from the Commonwealth through its exclusive statutory procedures, Mr. Lisowski has sued the Commonwealth's tax collection *agent* on the erroneous premise that Walmart knowingly "deceives" its customers into paying overcharges in violation of tax law—overcharges Walmart doesn't even keep.

All of Mr. Lisowski's claims are based on this implausible theory—one that, in *Bartolotta*'s words, makes "absolutely no sense."  They thus fail for several reasons.  To start, Mr. Lisowski's voluntary payment to Walmart cannot be recouped except through the procedure provided by statute. Thus, all of his claims are barred by the voluntary payment doctrine.   Further,

---

[1] Unless otherwise stated, all citations to "¶ ___" are to the Class Action Complaint, ECF 1-2.

Pennsylvania's exclusive statutory refund procedure displaces Mr. Lisowski's common law claims for conversion, unjust enrichment, and constructive trust.   Third, the Unfair Trade Practice Consumer Protection claim is not available to recoup solely economic losses, like those alleged here.   Fourth, Mr. Lisowski did not allege a plausible UTPCPL claim because Walmart is not engaged in "trade and commerce" when it collects taxes. Lastly, Mr. Lisowski did not allege any false or deceptive acts on which he justifiably relied, so he failed to state a claim for relief under the UTPCPL.

**BACKGROUND**

Like most states, the Commonwealth raises revenue by taxing retail sales.  72 P.S. § 7202. Sales tax is government-imposed but collected by retailers and remitted to the Commonwealth. 72 P.S. § 7237(b)(1), 72 P.S. § 7225.  "[A]s compensation for the expense of collecting and remitting the tax," the Commonwealth pays its retailers "the lesser of one per cent of the amount of the tax collected; or twenty-five dollars ($25) per return for a monthly filer." 72 P.S. § 7227.  Because Walmart collects and remits more than $600 annually, it is a monthly filer.  72 P.S. § 7217(a)(2-4). Walmart therefore retains $25 per month *regardless* of how much over $600 in sales tax it collects for the Commonwealth.  72 P.S. § 7227.

Pennsylvania exempts many items from sales tax.  72 P.S. § 7204.  Every three years, the Pennsylvania Department of Revenue publishes a list of exempt items.  61 Pa. Code § 58.1; ¶ 12, Ex. 4.  The Department also distributes a "Retailers' Information Booklet which … reproduces the list of taxable and nontaxable items."  61 Pa. Code § 58.2; ¶ 13, Ex. 5.  The Department's list of exempt items and the Retailers' Information Booklet state "dietary supplements and substitutes are not subject to tax."  ¶¶ 12-13.  The Retailers' Information Booklet also provides that "Energy drinks or shots 4 ounces or greater" are taxable, while "Energy drinks or shots less than 4 ounces" are not

2

taxable.  Ex. A at 21.[2]

Walmart is a retailer that does business in Pennsylvania.  ¶ 2.  So, as it must, Walmart collects sales tax on the goods it sells for the Commonwealth.  72 P.S. § 7237(b)(1).  Mr. Lisowski alleges that on two occasions—once in 2019 and again in 2020—he purchased "a 6-pack of 5-Hour Energy" from Walmart.  ¶¶ 5-9.  Each time, he paid 94 cents in tax.  *Id.*  Mr. Lisowski alleges that 5-Hour Energy is a tax-exempt "dietary supplement," ¶¶ 10-15, though he fails to acknowledge that the Department specifically has directed that energy drinks or shots that are 4 ounces or greater *are* taxable.  Ex. A at 21.  Walmart gave Mr. Lisowski a receipt for each of these purchases.  Exs. 2 and 3.  The receipts show the price of each item purchased, whether the item was taxable (signified by an "X" for taxable and an "N" for nontaxable in the right hand column), the total amount of the purchase, the tax rate, and the tax charged.  *Id.*

Mr. Lisowski alleges that he "believes" Walmart knew the "6-pack of 5-Hour Energy" was tax exempt, ¶ 21, but "fail[ed] to properly disclose to consumers that Defendant was not permitted to collect sales tax," ¶ 37.  He further contends that, by failing to disclose that 5-Hour Energy was tax exempt, and by collecting sales tax from him, Walmart engaged in "deceptive" conduct by supposedly (¶ 37(a)-(c)):

- Falsely representing that 6-packs of 5-Hour Energy are taxable;

- Structuring its receipts in such a way that a typical consumer is unaware of what items properly were subject to taxation; and

- Creating "a likelihood of confusion and misunderstanding with respect to what constitutes proper charges to customers purchasing goods in Pennsylvania."

Even though Walmart turned over to the Commonwealth the tax it collected, 61 Pa. Code § 34.2(d), Mr. Lisowski seeks to recover from Walmart the allegedly improper overcharge ($1.88)

---

[2] Mr. Lisowski attached a copy of the Booklet to his Complaint, *see* ¶ 13, Ex. 5, so the Court may consider it in ruling on this Motion.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

under theories of conversion, unjust enrichment, constructive trust, and under the UTPCPL.  ¶¶ 9-39.  Moreover, the UTPCPL allows private actions to recover "actual damages or [one hundred dollars] $100 per violation, whichever is greater," and permits courts to award treble damages.  ¶ 39 (citing 73 P.S. § 201-9.2).  Mr. Lisowski seeks to represent a class of customers who, on or after October 7, 2014, bought "any dietary supplement" from Walmart and paid sales tax. ¶ 41.

## LEGAL STANDARD

To withstand a motion to dismiss, a complaint must allege a claim "that is plausible on its face" when accepting all the factual allegations as true and drawing every reasonable inference in favor of the nonmoving party.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 & n.2 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[A] complaint that 'pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief.'"  *Parker v. Baker*, 2019 WL 6310754, at *2 (W.D. Pa. Nov. 25, 2019) (quoting *Iqbal*, 556 U.S. at 678).  In reviewing a complaint, the Court disregards conclusory assertions and bare recitations of the elements.  *Connelly*, 809 F.3d at 786.

## ARGUMENT

### I.    Because Mr. Lisowski Voluntarily Paid The Tax, He Cannot Recover It.

Mr. Lisowski's claims are subject to dismissal because he voluntarily paid tax on the product at issue.  Under the voluntary payment doctrine, "one who has voluntarily paid money with full knowledge, or means of knowledge of all the facts, without any fraud having been practiced upon him cannot recover it back by reason of the payment having been made under a mistake or error as to the applicable rules of law."  *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 661 (Pa. 2009) (quoting *In re Kennedy's Estate*, 183 A. 798, 802 (Pa. 1936)).

This common law doctrine applies with special force to tax collection. "The refund of taxes voluntarily paid is a matter of legislative grace and not a right." *Hazleton Nat. Bank v. Commonwealth*, 308 A.2d 195, 197 (Pa. Commw. Ct. 1973). Thus, "a voluntary, payment of taxes erroneously made, could not in the absence of a statute, be recovered." *Royal McBee Corp. Tax Case*, 143 A.2d 393, 395 (Pa. 1958); *Universal Film Exchanges, Inc. v. Bd. of Fin. & Revenue*, 185 A.2d 542, 544-45 (Pa. 1962). Consequently, the statutory refund procedure, 72 P.S. 7552, is the exclusive means to recover taxes voluntarily paid. *Hazleton Nat. Bank*, 308 A.2d at 197.

To avoid the voluntary payment doctrine, Mr. Lisowski must allege that his payment was made "without full knowledge of the facts, or because of the other party's fraud, or under some type of duress[.]" *Williams v. Enter. Holdings, Inc.*, 2013 WL 1158508, at *2 (E.D. Pa. Mar. 20, 2013). Mr. Lisowski makes no such allegations. To the contrary, Mr. Lisowski submits his receipts, Exs. 2 and 3, which disclosed: (a) the items purchased; (b) whether they were taxable (represented by an "X" in the far right hand column) or non-taxable (represented by an "N" in the far right hand column); (c) that Mr. Lisowski's "6-pack of 5-Hour Energy" was taxable; and (d) the amount of tax charged (7% of the taxable items' price).

Mr. Lisowski alleges that Walmart's receipts are "structure[d] … in such a way that a typical consumer … is unaware of what items purchased were properly subject to taxation." ¶ 37(b). This allegation changes nothing because the receipts themselves accurately reflected that sales tax was charged on Mr. Lisowski's purchase of 6-packs of 5-Hour Energy. Thus, because Mr. Lisowski could read the receipt (and, if he didn't understand it, ask at the store), he can't say that he lacked "full knowledge, or means of knowledge of all the facts." *Liss*, 983 A.2d at 661. Therefore, he "cannot recover it back by reason of the payment having been made under a mistake or error as to the applicable rules of law." *Id.*; *McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d

5

73, 84 (Ill. 2019) ("McIntosh has not pointed to any information set forth on the receipt that was factually inaccurate. As a consequence, McIntosh has not alleged any misrepresentation of a material fact as the basis for his claim under section 2 of the Consumer Fraud Act.").

Further, the allegation that the tax was not "proper" is a legal—not factual—allegation. ¶ 37(b). It therefore does not get around the voluntary payment doctrine because a payment is voluntary even if the purchaser is mistaken about whether the amount is legally due. *Acme Markets, Inc. v. Valley View Shopping Ctr., Inc.*, 493 A.2d 736, 737 (Pa. Super. 1985) (internal citation omitted) (voluntary payment doctrine bars claim where plaintiff had "full knowledge of the facts" but came "to an erroneous conclusion as to their legal effect"); *McIntosh*, 135 N.E. 3d at 82 ("Merely characterizing an act or practice as illegal is insufficient to defeat application of the doctrine."). What matters is that Walmart disclosed to Mr. Lisowski that it charged tax.  Because Mr. Lisowski "has not pointed to any information set forth on the receipt that was factually inaccurate," he "has not alleged any misrepresentation of a material fact" and cannot evade the voluntary payment doctrine.  *Id.* at 84.

 Mr. Lisowski's related allegation that Walmart misrepresented that 6-packs of 5-Hour Energy were taxable, ¶ 37(a), is also a representation "of law, constituting [Walmart's] understanding and interpretation of what the [sales] tax [statute] required." *McIntosh*, 135 N.E.3d at 85; *see also Ne. Pa. Imaging Ctr. v. Com.*, 35 A.3d 752, 757-58 (Pa. 2011) (explaining that whether "sales tax is due … is an issue of statutory interpretation of the Tax Reform Act's applicable provisions. Therefore, it is a pure question of law…"). The allegation does not sufficiently plead a statutory consumer fraud claim because "money voluntarily paid on a mistake of law cannot be recovered on the ground that the party supposed he was bound in law to pay it when in truth he was not." *Kirk v. Allegheny Towing Inc.*, 620 F. Supp. 458, 460 (W.D. Pa. 1985);

*see also Box Office Pictures, Inc. v. Bd. of Fin. & Revenue*, 166 A.2d 656, 659 (Pa. 1961) (applying the "familiar doctrine that monies paid voluntarily under mistake of law cannot be recovered back" to claim for return of allegedly unlawful taxes).

Mr. Lisowski tries to buttress his claim by alleging that customers do not receive a receipt until a purchase is completed.  ¶ 38.  But this too has no bearing on the voluntary payment doctrine because the customer has ample opportunity to learn the taxability of the product in advance or to subsequently protest the payment.  Not only did Mr. Lisowski *not* inquire about or contest the payment when he received his first receipt, he returned to the same store nine months later and purchased it *again* knowing that Walmart charged tax.  ¶¶ 8-9.  Thus, he voluntarily paid the $1.88 that he now seeks to recover by attempting to manufacture a claim after the fact.

Facing indistinguishable factual and legal allegations, the Illinois Supreme Court held that the voluntary payment doctrine barred a retail customer's consumer fraud claim. In *McIntosh*, 135 N.E.3d at 81-85, as here, a customer brought a putative class action under Illinois's version of the UTPCPL, 815 ILCS 505/1, alleging the retailer, Walgreens, "unlawfully collect[ed] a municipal tax … on purchases of bottled water that were exempt from taxation under the City ordinance." *Id.* at 76-77.  In applying the voluntary payment doctrine, the court in *McIntosh* reasoned that Walgreens gave the customer an accurate receipt, which disclosed the items sold, the price of those items, and the amount of tax collected. *Id.* at 84.  The court concluded: "Where the nature and amount of a charge is fully disclosed, the plaintiff cannot successfully assert that he or she was operating under a mistake of fact with regard to the charge." *Id*.

The Illinois Supreme Court further explained in *McIntosh* that where a plaintiff "had the ability to investigate the ordinance to determine if the bottled water tax applied to his purchases of carbonated or flavored water, [and] [h]e has not alleged that Walgreens had superior access to the

information set forth in the bottled water tax ordinance or that he could not have discovered what the ordinance required through the exercise of ordinary prudence, … the alleged misrepresentation asserted by McIntosh cannot form the basis of a claim for statutory consumer fraud."  135 N.E.3d at 85.  The same is true here.

The Illinois consumer fraud statute and the UTPCPL are both based on section 5(a) of the Federal Trade Commission Act "prohibit[ing] 'unfair methods of competition' and 'unfair or deceptive acts or practices.'"  *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 995 (Ill. 1990) (CLARK, J., concurring); *Commonwealth v. Monumental Props., Inc.*, 329 A.2d 812, 818 (Pa. 1974) ("[I]n all relevant respects the language of section 3 of the Consumer Protection Law and section 5 of the FTC Act is identical.").  Because the statutes derive from a single source, they should be "interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them."  1 P.S. § 1927.  Thus, the Illinois Supreme Court carefully resolved an indistinguishable statutory fraud claim in a highly persuasive ruling.

Accordingly, the voluntary payment doctrine bars Mr. Lisowski's claims as a matter of law.

## II.     Pennsylvania's Statutory Refund Procedure Bars Mr. Lisowski's Common Law Claims.

Under Pennsylvania law, a statutory remedy bars common law claims.  1 Pa. C.S. § 1504. "This statute [§ 1504] says in unambiguous language that, if the legislature provides a specific, [e]xclusive, constitutionally adequate method for the disposition of a particular kind of dispute, no action may be brought … to adjudicate the dispute by any kind of 'common law' form of action other than the exclusive statutory method."  *Lilian v. Commonwealth*, 354 A.2d 250, 253 (Pa. 1976) (quoting *Sch. Dist. of Borough of W. Homestead v. Allegheny Cty. Bd. of Sch. Directors*, 269 A. 2d 904, 907 (Pa. 1970)); *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 729 (Pa. 2012) ("[W]hen a statute articulates a remedy for the breach of a statutory obligation, that remedy is exclusive").

8

"[T]he exclusive nature of a statutory remedy is one of Pennsylvania's oldest legal principles." *Id.* at 731.

Counts I-III of the Complaint seek the return of allegedly improperly paid sales tax under common law theories of conversion, unjust enrichment, and breach of constructive trust.  ¶¶ 5-14, 20, 27, 33.  But the Tax Reform Code provides a specific statutory remedy for Mr. Lisowski's injury: a tax refund.  72 P.S. §§ 7252-7253.  It also establishes a clear and straightforward procedure to secure this remedy.  "[F]or a tax collected by the Department of Revenue, a taxpayer who has actually paid tax … to the Commonwealth or to an agent or licensee of the Commonwealth authorized to collect taxes may petition the Department of Revenue for refund or credit of the tax, interest or penalty."  72 P.S. § 10003.1.  Thus, the Tax Reform Code provides a clear, specific statutory remedy for resolving tax overpayment claims.

The Complaint itself effectively alleges that the statutory refund procedure squarely deals with Mr. Lisowski's claims because it alleges that another purchaser of 5-Hour Energy drinks used this procedure to secure a refund of the $4.51 in tax paid on that purchase.  ¶ 16 (Exs. 6-8).  Mr. Lisowski must follow the same path.  *See Quest Diagnostics Venture, LLC v. Com.*, 119 A.3d 406, 410 (Pa. Commw. Ct. 2015) ("[T]he directions of the statute must be strictly pursued to obtain the remedy"); *Sch. Dist. of Borough of W. Homestead*, 269 A.2d at 908 (1970) ("[A] comprehensive and constitutionally adequate procedure … is the exclusive procedure[.]").

In *Lilian*, the Pennsylvania Supreme Court held that the Tax Reform Code's refund procedure bars civil claims to return a sales tax overpayment.  467 A.2d 250.  There, the plaintiff purchased cars at retail and brought a class action seeking return of allegedly overpaid sales tax. *Id.* at 251-52.  The Commonwealth Court dismissed the complaint, holding that the Tax Reform Code provided a "statutory remedy [that] is adequate and complete."  *Lilian v. Com.*, 311 A.2d

9

368, 370 (Pa. Commw. Ct. 1973).  The Supreme Court affirmed, holding that the "Tax Reform Code of 1971, 72 P.S. §§ 7252-7255 provide[s] for the refunding of improperly assessed or paid sales taxes, and set forth the procedure whereby such refunds may be obtained." *Lilian v. Com.*, 354 A.2d 250, 252 (Pa. 1976).  The Court explained that "[w]here such an administrative remedy is statutorily prescribed the general rule is that a court—be it a court of equity or a court of law—is without jurisdiction to entertain the action. Strict compliance with the statutory procedure … is the norm." *Id.* (citing 1 Pa. C.S. § 1504).

It does not matter that Mr. Lisowski sued Walmart rather than the Commonwealth. The statutory refund procedure expressly applies regardless of whether a taxpayer paid tax "to the Commonwealth or to an agent or licensee of the Commonwealth authorized to collect taxes."  72 P.S. § 10003.1.  The Tax Reform Code's existing remedy bars Mr. Lisowski's common law tax refund claims.

### III.   Mr. Lisowski's UTPCPL Claim Fails As A Matter Of Law.

Mr. Lisowski's UTPCPL claim fails for three independent and sufficient reasons: (i) Walmart is not subject to the UTPCPL because its tax collection activity is not "trade and commerce"; (ii) it is barred by the economic loss doctrine; and (iii) Mr. Lisowski alleges no "false" or "deceptive" conduct by Walmart on which he justifiably relied.

The UTPCPL's "foundation" is "fraud prevention."  *Hampton v. Geico Ins. Co.*, 759 F. Supp. 2d 632, 651 (W.D. Pa. 2010) (citing *Commonwealth ex rel. Creamer v. Monumental Prop., Inc.*, 329 A.2d 812 (Pa. 1974)).  The law prohibits certain "unfair or deceptive acts or practices," 73 P.S. § 201-3, involving false representations, *id.* § 201-2(4)(viii), or "deceptive conduct," *id.* § 201-2(4)(xxi), "in the conduct of any trade or commerce," 73 P.S. § 201-3.

The statute broadly covers "false impression[s] … made knowingly or recklessly," *Hena v. Vandegrift*, 2020 WL 1158640, at *20 (W.D. Pa. Mar. 11, 2020), and other "misleading …

conduct," done knowingly, *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013). A plaintiff not only must identify a "false" or "deceptive" practice, he also must plead that he justifiably relied on that practice. *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) ("[A] plaintiff must allege reliance, that he purchased Ultra® because he heard and believed Sunoco's false advertising that Ultra® would enhance engine performance."). Thus, the UTPCPL targets knowingly false representations and other misleading conduct that *actually* caused a loss.

    **A.**    **When Collecting Tax, Walmart Does Not Engage in "Trade And Commerce."**

The UTPCPL covers "acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3. "Trade and commerce" under the UTPCPL refers to "mercantile activity in which the person engaged in that business is doing so *for private profit which could motivate unfair or deceptive practices for private gain or, more accurately, private greed....*" *Meyer v. Cmty. Coll. of Beaver Cty.*, 93 A.3d 806, 810 (Pa. 2014) (emphasis added) (internal citation omitted).

Mr. Lisowski alleges that Walmart violated the UTPCPL when it collected sales tax on goods exempt from tax. ¶¶ 5-9, 37. But Walmart engaged in the challenged conduct—tax collection—because the Commonwealth *required it* to do so. 72 P.S. § 7237(b)(1); *see also Aldine Apartments, Inc. v. Commonwealth*, 379 A.2d 333, 335-36 (Pa. Commw. Ct. 1977) (dismissing claims against utilities that collected and remitted taxes to the Commonwealth). It did not act for "private gain." *Meyer*, 93 A.3d at 810. Indeed, Walmart obviously prefers to charge less for its products, but charges and collects sales tax at the behest of the Commonwealth to which it turns over the tax proceeds. Walmart gains nothing from sales tax. Because tax collection is not a profit-making activity, it is not "trade and commerce."

Pennsylvania courts have not directly addressed whether retailers are engaged in "trade and commerce" when they collect taxes. But courts in Connecticut and Massachusetts have both construed the exact same language in their consumer fraud statutes. Both rejected such tax-

collection claims because sellers do not engage in "trade and commerce" when acting as tax collection agents.  Pennsylvania requires that "[s]tatutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." 1 P.S. § 1927.  Accordingly, this Court should construe the UTPCPL's "trade and commerce" provisions as the Connecticut and Massachusetts courts did.

In *Blass v. Rite Aid of Connecticut, Inc.*, a retail customer asserted that a retailer violated the Connecticut Uniform Trade Practices Act—which, as relevant here, is identical to the UTPCPL—by improperly collecting sales tax.  16 A.3d 855 (Conn. Super. 2009).  The court dismissed the complaint, holding the retailer was not engaged in "commercial" conduct because its collection of tax was "as an agent of the State." *Id.* at 863.  Thus, applying the state's consumer fraud statute was "inappropriate because that law"—like the UTPCPL—"protect[s] consumers from deceptive acts or practices *in the conduct of any trade or commerce*." *Id.* (emphasis original) (quoting General Statutes § 42–110b (a).  Tax collection activities were not that.

Similarly, in *Feeney v. Dell, Inc.*, a customer sued under Massachusetts' consumer-protection law, Chapter 93A, alleging the retailer engaged in deceptive practices "in the conduct of any trade or commerce" by "improperly collect[ing] Massachusetts sales tax on the purchase of optional service contracts … when (according to the plaintiffs) no such tax was due."  908 N.E.2d 753, 757 (Mass. 2009) (quoting G.L. c. 93A, § 2 (a)).  The Massachusetts' Supreme Court held that collecting sales tax was not trade or commerce.  "Where a party's actions are motivated by legislative mandate, not business or personal reasons," the consumer protection law "does not apply." *Id.* at 770.  *Feeney*'s reasoning applies here with equal force.

> [Plaintiff's] argument that Dell's 'for-profit sales of computer hardware and optional service contracts' were 'by definition' in a business context misses the mark. … [T]he issue here is more textured: the plaintiffs' claim is based not on the transactions as a whole, but on a particular component of the transactions, the allegedly improper collection of sales tax

12

in connection with the sales of the computer service contracts .... Even if, as the plaintiffs allege, … optional service contracts are not subject to such tax, that Dell remitted the proceeds from the tax collected to the Commonwealth—rather than retaining them for its own enrichment—compels a conclusion on the record here that Dell's collection of such tax was not motivated by 'business or personal reasons' but was pursuant to legislative mandate. *Id.* at 770-71 (citation omitted).

Mr. Lisowski's allegation that Walmart keeps 1% of the tax it collects does not alter the analysis. ¶ 28. To start, that allegation is legally incorrect. Walmart does *not* keep 1% of the sales tax it collects. Pennsylvania law is clear that Walmart only retains "*the lesser of*" 1% or $25 per month. 72 P.S. § 7227; 72 P.S. § 7217(a)(2-4). Twenty-five dollars is both a paltry sum—and fixed. Because Walmart collects sales tax on so many other items, it recoups a statutory maximum of $25 per month—regardless of whether it collected tax on any energy drinks.

Nor is Mr. Lisowski's allegation that Walmart was motivated by the 1% plausible even if true (which it isn't). Walmart would obviously place itself at a commercial disadvantage against other retailers that do not collect sales tax, and it would risk fines and penalties from the State for deliberately violating tax law. That is not plausible. *Parker*, 2019 WL 6310754, at *2 (W.D. Pa. Nov. 25, 2019) (reviewing court must "draw on its judicial experience and common sense" to determine if allegations state a plausible claim) (citing *Iqbal*, 556 U.S. at 786-87).

Walmart does not collect sales tax to make a profit. That activity is not "trade and commerce," and Mr. Lisowski's UTPCPL claim should be dismissed.

### B.    The Economic Loss Doctrine Bars Mr. Lisowski's UTPCPL Claim.

Because Mr. Lisowski seeks only economic damages arising from a consumer sales dispute, his claim is barred by the economic loss doctrine.

The economic loss doctrine prevents a plaintiff from recovering in tort where his only injury is economic. *Azur v. Chase Bank*, 601 F.3d 212, 223-24 (3d Cir. 2010). In *Werwinski v. Ford Motor Co.*, the Third Circuit held that the doctrine also bars claims under the UTPCPL that are

13

"intertwined with" a contractual injury. 286 F.3d 661, 678, 681 (3d Cir. 2002). The Court explained that "exempting statutory fraud claims from the effects of the economic loss doctrine would virtually nullify the doctrine since the statute is broad enough to encompass nearly every misrepresentation claim in the commercial sales context . . . ." *Id.* at 681 (internal citation omitted).

Mr. Lisowski's UTPCPL claim is exactly what *Werwinski* contemplated. He contends that Walmart misrepresented that 6-packs of 5-Hour Energy were taxable causing him to overpay for his purchase, and he now seeks to recoup his overpayment or statutory damages. ¶¶ 37-39. This is a quintessential "misrepresentation claim in the commercial context," alleging only an economic loss (and a *de minimus* one at that) arising from the purported breach of a sales agreement. UCC 2-204(1) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.")

After *Werwinski*, a panel of the Pennsylvania Superior Court held that the economic loss doctrine does not bar a UTPCPL claim, and some district courts have since declined to follow *Werwinski*. *See*, *e.g.*, *Bordoni v. Chase Home Finance LLC*, 374 F. Supp. 3d 378, 385 (E.D. Pa. 2019) (collecting cases). But the Third Circuit has reaffirmed *Werwinski*, describing it as "binding Third Circuit precedent" and relying on it to support dismissal of a UTPCPL claim—despite the contrary Pennsylvania lower court decision. *Berkery v. Verizon Comm., Inc.*, 658 Fed. Appx. 172, 175 (3d Cir. 2016). Thus, *Werwinski* binds this Court and, in any event, is the better-reasoned and more persuasive decision.

Although a Pennsylvania appellate court reached a conclusion conflicting with *Werwinski*, a "federal district court ... must follow decisions of the court of appeals in the same circuit in preference to the decisions of all other courts, state or national, unless there is a contrary decision by the U.S. Supreme Court." BRYAN A. GARNER, NEIL M. GORSUCH, BRETT M. KAVANAUGH, ET

AL., THE LAW OF JUDICIAL PRECEDENT 491 (2016). The Third Circuit in *Werwinski* held that the Pennsylvania Supreme Court would apply the economic loss doctrine to bar certain claims under the UTPCPL. 286 F.3d at 681-82; *see also Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996) ("[I]n adjudicating a case under state law," federal court must "predict how [the state's highest court] court would decide the precise legal issues."). "*Werwinski*'s prediction of the Pennsylvania Supreme Court's ruling on the economic loss doctrine remains binding on the district courts in this Circuit until either the Pennsylvania Supreme Court or the Third Circuit rules otherwise." *McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (dismissing UTPCPL claim arising from insurance dispute based on *Werwinski*).   Neither the Pennsylvania Supreme Court nor "the Third Circuit has … questioned the propriety of its decision in *Werwinski*."   *Bolus v. Nationwide Prop. & Cas. Co.*, 2018 WL 1474669, at *6 (M.D. Pa. Mar. 26, 2018).  And other district courts in Pennsylvania have thus concluded that they are not free to "'usurp the Circuit's authority and do so itself.'"  *Id.* (quoting *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016)).

The Third Circuit not only declined to repudiate *Werwinski*, it reaffirmed that ruling in *Berkery*. This further confirms *Werwinski*'s continued vitality. "The Circuit's rulings are best-indicators regarding the state of the law; particularly where, as here, the UTPCPL claims are plain and obvious restatements of contract-theories."  *Zemba v. NVR, Inc.*, 2018 WL 3023220, at *3 n.5 (W.D. Pa. June 18, 2018).[3]

---

[3] Those courts that have relied on *Robinson v. Jiffy Executive Limousine Co.*, 4 F.3d 237 (3d Cir. 1993), as permitting district courts to stray from *Werwinski*'s holding have misread the decision.  *See*, *e.g.*, *Busch v. Domb*, 2017 WL 6525779, at *4 (E.D. Pa. Dec. 21, 2017). *Robinson* addressed when the appellate court could deviate from its own precedent. 4 F.3d at 239-40. Whatever obligation the Circuit Court may have to follow its own precedent, the district court's duty to follow circuit precedent "is absolute, as it must be in a hierarchical system with 'one

And because *Werwinski* "has direct application in [this] case," the district courts in this Circuit must follow it—even if it "appears to rest on reasons rejected in some other line of decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *see also Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 5407748, at \*5 (W.D. Pa. Sept. 8, 2020) (explaining "this Court is bound by Third Circuit precedent" and must follow its "reasoning" even when it "strikes the court" that the precedent is "inconsistent" with other cases). Though the Third Circuit retains the prerogative to revisit its own decisions in light of subsequent Pennsylvania appellate cases*,* it is not compelled to do so. *See Debiec v. Cabot Corp.*, 352 F.3d 117, 131 (3d Cir. 2003) (declining to overrule earlier case predicting Pennsylvania law "notwithstanding the contradictory Pennsylvania Superior Court opinions on this issue"). Here, the Third Circuit spoke clearly and declined to revisit its conclusion after the Pennsylvania appellate court disagreed. *Werwinski* remains binding precedent and should be followed.

Moreover, not only is *Werwinski* binding, it is soundly reasoned, and no Pennsylvania court has challenged that reasoning. *Werwinski* reviewed the economic loss doctrine in Pennsylvania and other jurisdictions to assess whether claims of intentional fraud fell within the doctrine. 286 F.3d at 674-80. It recognized the division of authority on the subject, *id.* at 675-78, reviewed the parties competing arguments, *id.* at 678-80, and relied on relevant precedent from the Pennsylvania Supreme Court, *id.* at 680. It ultimately concluded that the better-reasoned approach—and the one Pennsylvania's Supreme Court likely would follow—was to "restrict[] liability rather than expand[] it" because "the economic loss doctrine is designed to … establish clear boundaries between tort and contract law," *id.* at 680-81. The Court explained that UTPCPL claims, although

---

supreme Court.'" *Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 n.5 (2020) (KAVANAUGH, J., concurring in part).

statutory, "should be treated the same way as common law fraud claims under the economic loss doctrine." *Id.* at 681.  Carving an exception out of the economic loss doctrine for such claims would swallow the rule because the broad language of UTPCPL would allow every sales dispute to be recast as a "misrepresentation" under the statute. *Id.*

In a two-sentence, wholly conclusory discussion, a panel of the Pennsylvania appellate court reached a different conclusion. "The claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to Knight's UTPCPL claims." *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. 2013).  *Knight* did not even mention *Werwinski*, and it left unanswered the numerous reasons underlying the Third Circuit's holding. Thus, *Werwinski* continues to reflect the better reasoned approach—and the one the Pennsylvania Supreme Court likely would adopt. *Werwinski*, 286 F.3d at 680-81.[4]

### C.    Mr. Lisowski Has Not Alleged Misrepresentation, Deceptive Conduct, Or Justifiable Reliance.

Mr. Lisowski asserts that Walmart violated §§ 201-2(4)(v) and (xxi) through false "representation[s]" and "deceptive conduct." ¶ 37.  But his allegations support neither violation.

*No Actionable Representation.*  It is a violation of § 201-2(4)(v) to "represent[ ] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have[.]"  This applies when a defendant "misrepresents the characteristics of a product, such as suits involving false advertising." *Trunzo v. Citi Mortg.*, 876 F. Supp. 2d 521, 542 (W.D. Pa. 2012).  Mr. Lisowski alleges that Walmart misrepresented the taxability of 6-packs of 5-Hour

---

[4] The state court in *Dixon v. Northwestern Mutual* also declined to apply the economic loss doctrine to a claim under the UTPCPL, holding it was "bound by *Knight*," but the court also recognized that "federal courts in this Commonwealth … are still bound by *Werwinski*." 146 A.3d 780, 790 n.12 (Pa. Super. Ct. 2016).

Energy.  ¶ 37(a).  But imposing a tax is not an actionable "representation."  *See Zajick v. The Cutler Grp., Inc.*, 169 A.3d 677, 680 (Pa. Super. Ct. 2017) (rejecting UTPCPL claim where plaintiff did not produce any evidence of specific representations); *Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 385 (E.D. Pa. 1998) ("[T]he plain language of those provisions requires an affirmative representation as a predicate for liability").

Even assuming a representation was made, whether 6-packs of 5-Hour Energy are taxable or not is not a representation about the product's *characteristics*.  § 201-2(4)(v). A "characteristic" is "a distinguishing trait, quality, or property." *Characteristic*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/characteristic (last visited Nov. 23, 2020). Taxability is not an intrinsic characteristic of dietary supplements.  It is "an issue of statutory interpretation." *Ne. Pa. Imaging Ctr.*, 35 A.3d at 757-58. Thus, Walmart's supposed misapplication of the Commonwealth's sales tax law is not an actionable "represent[ation]" regarding the "characteristics" of 5-Hour Energy drinks.  *See Angino v. Wells Fargo Bank, N.A.*, 2016 WL 787652, at *11 (M.D. Pa. Feb. 19, 2016), *report and recommendation adopted*, 2016 WL 759161 (M.D. Pa. Feb. 26, 2016) (allegation that the defendant "did not comply with the federal HAMP guidelines" did not state a claim under UTPCPL); *Karlsson v. F.D.I.C.*, 942 F. Supp. 1022, 1024 (E.D. Pa. 1996) (dismissing UTPCPL claim where the plaintiff "failed to allege any misrepresentation of fact").

***No Justifiable Reliance.***  Further, because the "definitive word on the subject" of whether 6-packs of 5-Hour Energy were taxable—the sales tax law—"was equally accessible to" Mr. Lisowski and Walmart, Mr. Lisowski can "not justifiably rely on" the defendant's legal opinion. *Posel v. Home Depot U.S.A., Inc.*, 1995 WL 214454, at *4 (E.D. Pa. Apr. 3, 1995).  Indeed, the Retailer's Information Booklet is posted on the Department's website where Mr. Lisowski can find

18

it. *See* https://www.revenue.pa.gov/FormsandPublications/FormsforBusinesses /SUT/Documents /rev-717.pdf. Therefore, he could not justifiably rely on Walmart's supposed "representation" regarding taxability rather than look himself at the law.

*No Deceptive Conduct.* Mr. Lisowski's reliance on the UTPCPL's "catch-all" provision also fails. ¶ 37(b)-(c) (citing § 201-2(4)(xxi)). Mr. Lisowski asserts Walmart "engag[ed] in deceptive conduct" by "structuring its receipts" in a confusing way such that a "typical consumer" will be unable to determine "what items purchased were properly subject to taxation, even after the item is purchased and payment is tendered." ¶ 37(b).

A review of the receipts, themselves (attached to the Complaint as Exs. 2 and 3), refutes this contention. And the Court can disregard factual allegations inconsistent with the receipts. *Bell v. Rothrock*, 2020 WL 1288484, at \*3 (M.D. Pa. Jan. 30, 2020), *report and recommendation adopted*, 2020 WL 1244595 (M.D. Pa. Mar. 16, 2020). The receipts contain exactly the same information as any other retail sales receipt. *Compare* ECF 1-2 at 92 (Compl. Ex. 6). A typical consumer will have seen hundreds of receipts just like these and is not likely to be confused. Any suggestion to the contrary is hardly plausible.

Exhibit 2 lists the items purchased, the price of each item, the subtotal, the amount of tax charged and the total—a typical retail sales receipt. The tax is identified as 7% of the cost of the items, and application of elementary math skills reveals that the $1.78 in tax is 7% of the subtotal. ($25.39 × .07 = $1.78). Thus, the receipt discloses that all of the purchased items were taxable and taxed at the statutory rate. Exhibit 3 similarly shows the purchase of ten items, nine of which were nontaxable signified by the letter "N" in the right-hand column. The total tax charge is 7% of the cost of the single taxable item—the 5-Hour Energy six pack. Again, the information on the receipt and simple arithmetic reveal exactly which items were subject to tax ($13.48 × .07 = $0.94).

19

Tellingly, Mr. Lisowski does not maintain that Walmart's receipts fail to conform to industry norms. In fact, the receipt attached as Exhibit 6 to the complaint is substantively the same as the receipts given to Mr. Lisowski, except that taxable items are signified by the letter T, rather than X. Nor does he assert that the taxation of 5-Hour Energy drinks was hidden, buried in fine print, or otherwise concealed. Rather, Mr. Lisowski simply says that a typical consumer would not understand an ordinary receipt. ¶ 37(b). This is not plausible.

Thus, Mr. Lisowski has not alleged that Walmart deceived him as to whether it charged sales tax. He has alleged, at most, that Walmart got the tax wrong. But misclassifying exempt and taxable items is neither false nor deceptive, and therefore cannot form the basis of a UTPCPL claim. *See*, *e.g.*, *Conquest v. WMC Mortg. Corp.*, 247 F. Supp. 3d 618, 647 (E.D. Pa. 2017) (complaint "fail[ed] to plausibly allege a violation of UTPCPL" where defendants' representations "[we]re consistent with the terms of the Mortgage"); *Velazquez v. State Farm Fire & Cas. Co.*, 2020 WL 1942784, at *4 (E.D. Pa. Mar. 27, 2020, *report and recommendation adopted*, 2020 WL 1939802 (E.D. Pa. April 22, 2020) (complaint did not allege a plausible deceptive practice where communications with the defendant disclosed allegedly wrongful reduction in coverage).[5]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

---

[5] Mr. Lisowski also alleges that Walmart "engag[ed] in deceptive conduct which creates a likelihood of confusion and misunderstanding with respect to what constitutes proper charges to customers purchasing goods in Pennsylvania." ¶ 37(c). This conclusory allegation should be disregarded because it is either duplicative of the allegations in ¶¶ 37(a) and 37(b) or lacks any supporting allegations of fact. *Connelly*, 809 F.3d at 786 n.2 ("[W]e disregard legal conclusions and recitals of the elements of a cause of action.").

Date: November 24, 2020                        Respectfully submitted,

                                               By: */s/ Thomas E. Sanchez*
                                               Thomas E. Sanchez (Pa. I.D. No. 311199)
                                               Michael P. Pest (Pa. I.D. No. 312025)
                                               ECKERT SEAMANS
                                               CHERIN & MELLOTT, LLC
                                               600 Grant Street, 44th Floor
                                               Pittsburgh, PA 15219
                                               (412) 566-6000 (telephone)
                                               (412) 566-6099 (facsimile)
                                               tsanchez@eckertseamans.com
                                               mpest@eckertseamans.com

                                               Suyash Agrawal (admitted *pro hac vice*)
                                               MASSEY & GAIL LLP
                                               50 E. Washington Street, Suite 400
                                               Chicago, Illinois 60602
                                               (312) 283-1590 (telephone)
                                               (312) 379-0467 (facsimile)
                                               sagrawal@masseygail.com

                                               Kathryn Robinette (admitted *pro hac vice*)
                                               MASSEY & GAIL LLP
                                               1000 Maine Ave. SW, Suite 450
                                               Washington, D.C. 20024
                                               (202) 652-4511 (telephone)
                                               (312) 379-0467 (facsimile)
                                               krobinette@masseygail.com

                                               *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Defendant Walmart's Brief in Support of its Motion to Dismiss was filed via the electronic filing/service system of the United States District Court for the Western District of Pennsylvania, on this 24th day of November, 2020, which will send notification of such filing to all counsel of record.

*/s/ Thomas E. Sanchez*
Thomas E. Sanchez
