# EXHIBIT A

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

BRIAN FARNETH, on behalf of himself
and all other similarly situated,

      Plaintiffs,

v.

WALMART STORES, INC. t/d/b/a
Walmart,

      Defendant.

CIVIL ACTION – LAW

NO.: GD-13-11472

**PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANT'S PRELIMINARY
OBJECTIONS**

Filed on behalf of Plaintiffs

Counsel of Record for this Party:

Frank G. Salpietro, Esquire
Pa. I.D. No. 47154

Lori R. Miller, Esquire
Pa. I.D. No. 85774

ROTHMAN GORDON, P.C.
Firm No. 010

310 Grant Street, Third Floor
Pittsburgh, PA 15219
412-338-1185
FGSalpietro@rothmangordon.com

FILED

14 APR 21 PM 3: 13

DEPT. OF ... RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| BRIAN FARNETH, on behalf of himself and all others similarly situated, | CIVIL ACTION – LAW |
| | NO.: GD-13-11472 |
| Plaintiffs, | |
| v. | |
| WALMART STORES, INC. t/d/b/a Walmart, | |
| Defendant. | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S PRELIMINARY OBJECTIONS

### I.    PROCEDURAL AND FACTUAL BACKGROUND

On June 18, 2013, Plaintiff, Brian Farneth, on behalf of himself and all others similarly situated ("Plaintiffs"), commenced this action by filing a complaint against Defendant Walmart Stores, Inc. t/d/b/a Walmart ("Defendant").  Plaintiffs' Complaint alleged five counts as follows: Count I- Conversion and Misappropriation, Count II – Breach of Constructive Trust, Count III – Unjust enrichment, Count IV – Unfair Trade Practices and Count V – Injunction.

Defendant removed the case to the United States District Court of the Western District of Pennsylvania and the Honorable Mark Hornak remanded the case to this Court by Order dated December 30, 2013.   On February 14, 2014, Defendant filed Preliminary Objections to Plaintiffs' Complaint, seeking dismissal of all Counts and/or a stay of the case.  The relevant facts in this matter are as follows:

On June 8, 2013, Plaintiff Farneth purchased 2 cans of shaving gel at the Walmart Store located at 877 Freeport Road, Pittsburgh, Pennsylvania 15238.  At the time of the purchase, he

presented to the cashier a "buy one, get one free" coupon, a sample of which is attached to the Complaint as Exhibit 1. The cash receipt, attached to Plaintiffs' Complaint as Exhibit 2, documents the purchase of the items and the acceptance of the coupon related to that item. (Complaint ¶ 4).

Plaintiff Farneth's receipt clearly sets forth both a description of the two cans of shaving gel purchased by him and the products' universal product code (hereinafter the "UPC") that was read electronically by Walmart's scanner, which also acts as a cash register. (Complaint ¶ 5). The coupon presented by Plaintiff Farneth was also read electronically by Walmart's scanner/cash register. The receipt plainly sets forth as a separate line item the term "COUPON." On the same line of the receipt, the receipt further sets forth (1) the item to which the coupon relates to by referring to the products' (the shaving creams') UPC, (2) the coupon's own UPC, and (3) the reduction to the purchase price of the 2 cans of shaving gel attributable to the coupon. (Complaint ¶ 6).

Plaintiff Farneth was charged sales tax of $0.42 on the sale. (Complaint ¶ 7). Walmart's computation of the sales tax did not take into account reduction of the sales price attributable to the coupon. The $0.42 of sales tax was determined by multiplying .07 times the sales price of 2 cans of shaving gel of $5.94 (each can cost $2.97), even though Plaintiff Farneth only paid $2.97 for the 2 cans of shaving gel. (Complaint ¶ 8).

72 P.S. Section 7202 provides that sales tax is imposed upon each separate sale of tangible personal property within the Commonwealth of Pennsylvania equal to 6% (7% in Allegheny County) of the "purchase price", which shall be collected by the vendor from the purchaser. (Complaint ¶ 9). The regulations promulgated by the Pennsylvania Department of Revenue specifically exclude the amount of discounts attributable to coupons from the

imposition of sales tax if both the item purchased and the coupon itself are described on the cash register tape.  In particular, Section 33.2(b)(2) of the Pennsylvania Department of Revenue Tax Regulations provides, in its relevant part:

> Amounts which are excluded from the taxable portion or purchase price, if separately stated and identified, include:
>
> . . .
>
> (2) Discounts.  Amounts representing on-the-spot cash discounts, employee discounts, volume discounts, **store discounts such as "buy one, get one free,"** wholesaler's or trade discounts, **rebates and store or manufacturer's coupons** shall establish a new purchase price if both the item and the coupon are described on the invoice or cash register tape.
>
> Pa. Reg. Sec. 33.2(b)(2)(emphasis added). (Complaint ¶ 10).

In its Pennsylvania February/March 2005 Tax Update, which is attached as Exhibit A to Defendant's Preliminary Objections, the Pennsylvania Department of Revenue clarified questions that had been raised by the regulations by stating the following:

> The regulations **require** a retailer to deduct the coupon amount from the taxable portion of the purchase price, if the cash register receipt describes both the item purchased and the coupon that applies to it.  The description requirement ensures that a coupon relating to a nontaxable item will not reduce the taxable purchase price.  It also protects the retailer by showing why the taxable price was reduced.
>
> The Department interprets the requirement of a description to mean that the cash register receipt makes a clear reference to the item and the coupon related to it or a clear reference that there is an amount deducted on any purchase or a percentage discount on all items listed whether taxable or not. (Complaint ¶ 11).

On Plaintiff Farneth's June 8, 2013 receipt, Walmart clearly and unequivocally described both the items that Plaintiff Farneth purchased as well as the coupon that applied to his purchases. Walmart linked the items that Plaintiff Farneth purchased to the coupon that applied to the items he purchased by the UPC. In fact, Walmart even went beyond the requirements of the Department of Revenue's Regulations by providing on Plaintiff Farneth's receipt the UPC of the coupon itself. (Complaint ¶ 12).

Walmart was required, but failed, to deduct the amount of the coupon from the taxable portion of Plaintiff Farneth's purchase price. It is Plaintiffs' belief Walmart has acted in similar fashion with respect to store and manufacturer's coupons tendered by other Class Members and that Walmart overcharges, continues to overcharge, and has in the past overcharged sales tax to Pennsylvania residents attributable to sales in its Pennsylvania stores and Internet sales in violation of Pennsylvania Tax Law and Regulation. (Complaint ¶ 13-14). Walmart directly benefits from these overcharges since it is entitled to a commission of 1% of taxes improperly charged by virtue of Section 7227 of the Pennsylvania Tax Code, 72 P.S. § 7227. (Complaint ¶ 15).

## II.   **STANDARD OF REVIEW**

Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. Baker v. Brennan, 419 Pa. 222, 225, 213 A.2d 362, 364 (1965). The test on preliminary objections is whether it is clear and free from doubt from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. Firing v. Kephart, 466 Pa. 560, 563, 353 A.2d 833, 835 (1976). To determine whether preliminary objections should be sustained, the court must consider as true all of the well-pleaded material facts set forth in appellant's complaint and all

4

reasonable inferences that may be drawn from those facts. <u>Feingold v. Bell of Pennsylvania</u>, 477 Pa. 1, 4, 383 A.2d 791, 792 (1977); <u>Pennsylvania Liquor Control Board v. Rapistan, Inc.</u>, 472 Pa. 36, 42, 371 A.2d 178, 181 (1976).

Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer. In order to sustain a demurrer, it is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. <u>Bailey v. Storlazzi</u>, 1999 PA Super 97, 729 A.2d 1206, 1211 (Pa. Super. Ct. 1999)  Evidence *dehors* the record is to be disregarded.  Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." <u>Bailey</u>, 729 A.2d at 1211.

## III.  **ARGUMENT:**

### A. Defendant's Request For a Demurrer Must Be Denied As Plaintiffs Can Recover Directly From Walmart For Its Conduct in Improperly Collecting Sales Tax From Consumers

Walmart contends that Plaintiffs are unable to maintain any claims against it, since it is only a collecting agent for the Commonwealth of Pennsylvania and can play no role in the refund of sales tax to purchasers.  This argument is fundamentally flawed.

First, it is important to correct Walmart's misstatement in its brief that all of Plaintiffs' claims relate to the collection **and** recovery of the improperly collected taxes.  In fact, Count IV of Plaintiffs' Complaint sets forth a cause of action for violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, <u>et seq.</u>, based on Walmart's fraudulent practices, which created a "likelihood of confusion or misunderstanding" by telling consumers, in essence,

"you owe tax" when they really did not and by formatting its receipt in a way that was misleading and deceptive to the customer.

In addition, the Department's Office of Chief Counsel has expressly acknowledged that a mechanism exists to permit a consumer/customer to get reimbursed for erroneously collected sales tax, <u>without</u> directly requesting a refund from the agency. In Revenue Ruling SUT-03-038 (revised as of November 18, 2009), the Department expressly acknowledged that, provided certain accounting procedures are followed, a vendor taxpayer (like Walmart) can reimburse the erroneously-paid sales tax to its customer, and then "take a credit on a subsequent sales and use tax return...for taxes overpaid in the three years prior to the date upon which the credit is taken." <u>See</u> Exhibit 1 attached hereto and provided herewith.

This is consistent with other sections of the Tax Code. <u>See, e.g.</u>, 72 P.S. § 1108(b) (authorizing the Department of Revenue to "enter a credit" in payment of any future tax return, even authorizing the assignment of the credit "to any other person"). <u>See also</u> <u>Fidelity Bank v. Commonwealth, Department of Revenue</u>, 165 Pa. Comm. 524, 645 A.2d 452 (1994) (Giving credits instead of refunds to eradicate unfair aspect of prior tax is proper and specifically authorized).

Moreover, Plaintiffs' request for relief (<u>see</u> Count V of the Complaint) asks the Court to decree that <u>Walmart</u> be the one to seek a refund from the Department of Revenue, given that it is in the best position to identify the Class Members and the amounts involved. This can be accomplished either directly (since Walmart is a "taxpayer" as defined in 72 P.S. § 7201(n)), or by way of an assignment from the Class. <u>See, e.g.</u>, 72 P.S. § 7252 (refunds can be made to "assigns" of taxpayers); 72 P.S. § 1108(b)(3) (credits can be assigned). Indeed, the agency which Walmart acknowledges has the expertise to implement its own statute has promulgated an

"Assignment of Rights – Sales/Use Tax Refund" (Form DBA-06), evidencing a clear intent to allow assignment of refund claims. See Exhibit 2 attached hereto and provided herewith.

In the context of a class action, this provides the Court the ability to equitably manage the litigation while adhering to the needs of all parties. For example, a Court would have the inherent power, after certifying the class, to fashion relief which allows the Class Members to get reimbursement from Walmart – who can then either take a credit against future sales tax returns, or receive (as a condition to funding the reimbursements) an assignment of claims which can be pursued by Walmart directly.

Moreover, Walmart conveniently fails to acknowledge that in addition to serving as a "collecting agent" for the Commonwealth, Walmart also retains a 1% commission of the full sales tax collected by it from each consumer. 72 P.S. § 7227. Walmart certainly has a beneficial interest in these funds and with regard to these funds, it is not merely acting as a collecting agent and Plaintiffs must be able to bring a claim against Walmart to recover these monies.

In support of its demurrer, Walmart relies on two cases, Lillian and Aldine Apartments, which sustained the demurrers of certain vendors, where it was found that the plaintiffs had an adequate and complete remedy at law. See, Lillian v. Commonwealth, 311 A.2d 368, 369 (Pa. Cmwlth. 1973), aff'd, 354 A.2d 250 (Pa. 1976); Aldine Apartments, Inc. v. Commonwealth, 379 A.2d 333, 336 (Pa. Cmwlth. 1977).

The instant case is distinguishable from each of those cases. In both cases, the only remedies sought by the plaintiffs were an injunction and the refund of certain taxes that were improperly collected, which remedy was allegedly fully available by seeking a refund from the Department of Revenue. Id.; Lillian, 311 A.2d at 369. In the instant case, Plaintiffs have alleged claims for conversion, breach of constructive trust, unjust enrichment, unfair trade practices and

an injunction, and several of the remedies sought by Plaintiffs are not available from the Department of Revenue.

To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the Plaintiff upon the facts averred. Any doubt must be resolved by a refusal to sustain the objections. Stoloff v. Neiman Marcus Group, Inc., 24 A.3d 366, 370 (Pa. Super. 2011). Walmart has not met this burden and as such, its request for a demurrer must be denied.

In addition, a finding that the Plaintiffs' ability to recover for improper collection of sales tax is limited to seeking a refund – on an individual basis – directly from the Department, frustrates the very policy for class actions. It is highly unlikely a consumer would take the time to investigate, let alone challenge, the Commonwealth on what would amount to a small refund.[1]

## B. The Department of Revenue is Not an Indispensable Party to This Action and Defendant's Request For Dismissal for Nonjoinder of A Necessary Party Must Be Denied

The gravamen of Walmart's next objection is that the Department of Revenue is an indispensable party to this action and as such, it must be added as a party, which will deprive this Court of jurisdiction. This is yet another attempt by Walmart to unreasonably delay this matter. When Plaintiffs originally filed the current action in this Court on June 18, 2013, almost one year ago, Walmart immediately removed the case to the U.S. District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1332(d)(2), alleging that the federal court not only had "original jurisdiction," but that Walmart was the "primary defendant."

Shortly after the case was removed, Walmart took a completely inconsistent jurisdictional position – contending that instead of the Federal Court, a state agency has both "primary

---

[1] Indeed, even in the Class Representative's case, it would cost him more to mail the refund petition than he would receive as a refund. The Pennsylvania Supreme Court has held that class actions are an important device to allow redress of small claims, and that any doubt as to the propriety of certification should be resolved in favor of a class action. Foust v. Southwestern Transportation Authority, 756 A.2d 112 (Pa. 2000).

jurisdiction" and the sole responsibility for "resolving disputes as to the imposition, collection and refund of the sales tax... ." Walmart instead filed a Motion for Stay. In response, Plaintiffs filed a Motion to Remand, which Motion was granted by the federal court on December 30, 2013 and the case was transferred back to this Court.

Now, Walmart seeks dismissal of the action from <u>this</u> Court on the basis that this Court lacks jurisdiction over the matter and that only the Commonwealth Court can properly hear the case (even though it earlier removed the case on the basis that "only" the District Court had jurisdiction). Plaintiffs respectfully submit that Walmart should not be rewarded for the unnecessary delays it has caused in this matter and that this Court should retain jurisdiction over the case, if possible.

The Pennsylvania Supreme Court has stated that a party is indispensable "when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." <u>City of Philadelphia v. Commonwealth</u>, 838 A.2d 566, 567 (Pa. 2003), *quoting*, <u>Sprague v. Casey</u>, 550 A.2d 184, 189 (Pa. 1988). The basic inquiry concerns whether justice can be done in the absence of him or her. <u>Id</u>. In undertaking this inquiry, courts must consider the nature of the claim and the relief sought by the plaintiff. <u>Id</u>. The best way to determine whether a party is so closely related is to balance the interests of the plaintiff, the defendant, the absent party and society's interest in the orderly and efficient administration of justice. <u>CRY, Inc. v. Mill Service, Inc.</u>, 640 A.2d 372, 375 (Pa. 1994).

The Court's consideration must involve at least the following: 1) Do absent parties have a right or interest related to the claim?, 2) If so, what is the nature of the right or interest?, 3) Is that right or interest essential to the merits of the issue?, and 4) Can justice be afforded without violating the due process rights of absent parties? <u>Mechanicsburg Area School District v. Kline</u>,

9

431 A.2d 953 (Pa. 1981).   Such an inquiry entails an assessment of the particular facts and circumstances presented in each case.   City of Philadelphia, 838 A.2d at 567.

In addition, the joinder requirement is subject to limiting principles.   Id. at 568.   For example, when a party's official agent or designee is already a party to the action, the participation of such designee may alone be sufficient, as the interests of the two are the same, and thus, the participation of both would result in duplicative filings.   Id.   In addition, the Commonwealth Court has stated that "a Commonwealth agency should not be declared an indispensable party unless meaningful relief cannot conceivably be afforded without the sovereign itself becoming involved.   Pennsylvania State Education Association v. Commonwealth, 516 A.2d 1308, 1310 (Pa. Cmwlth. 1986).

In this matter, as Walmart continually points out, vendors (like Walmart) who collect sales tax in the Commonwealth are licensed by the Commonwealth to do so and act as designated "agents" of the Commonwealth.   Gray v. Commonwealth, 714 A.2d 1124, 1125 (Pa. Cmwlth. 1998).   As such, since Walmart, in collecting the sales tax which is the subject of the dispute in this action, is acting as the agent or "designee" for the Commonwealth, the participation of Walmart in this action should be sufficient to protect the interests of the Commonwealth.   Since meaningful relief may be sought on behalf of the Commonwealth through its agent, Walmart, the Commonwealth should not be declared an indispensable party in this action.

With regard to the questions to be considered by the Court, it is Plaintiffs' position that the Commonwealth does not have a right or interest in the claims in this action and justice can be afforded without violating the due process rights of the Commonwealth.   As is stated in Section A above, Plaintiff has filed claims only against Walmart and not the Commonwealth and

Plaintffs are not seeking any declaratory relief in this action, which might bind the Commonwealth in a subsequent action.  Pursuant to Revenue Ruling SUT-03-038, Plaintiffs can seek a refund from the vendor and the vendor can then request payment and/or a credit from the Commonwealth.  Furthermore, balancing the interests of the Plaintiffs, Defendant, the Commonwealth and society's interest in the orderly and efficient administration of justice, requires a conclusion that the Commonwealth is not an indispensable party, since the addition of the Commonwealth would further delay this action and may prevent the Plaintiffs from asserting their claims as a class action if the matter is transferred to the Commonwealth Court.

Walmart initially claims that the Department of Revenue is an indispensable party in this action because Plaintiffs' claims directly implicate the Department of Revenue's regulatory authority and activity and that in order to rule in favor of Plaintiffs' favor, the Court will have to interpret the sales tax law in a manner contradictory to the interpretation provided by the Department of Revenue.  This is simply untrue.

In support of its argument, Walmart relies on the August 11, 2005 letter attached as Exhibit C to its Preliminary Objections, wherein a Deputy Counsel and employee of the Department suggest that Walmart "may not deduct the manufacturer's coupon from the purchase price prior to calculating the sales tax."  Not only is this Exhibit *dehors* the record and thus, improperly considered at the preliminary objection stage, but the letter is not relevant to this action because the letter is "stale" in that, per the express language of the Pennsylvania Code (of which Walmart was presumably aware), the effect of the letter only lasted five years – and thus expired on April 11, 2010 and Walmart apparently chose not to renew the letter.  See 61 Pa. Code § 3.3(b).  Moreover, the plain language of Pa. Reg. Sec. 33.2(b)(2), cited supra, only requires a simple "description" of the item purchased and the coupon on the same receipt.  There

is no dispute this happened here.   Indeed, how else would Walmart's electronic POS system know whether the proper coupon was used?

Walmart further relies on the Commonwealth Court's holding in <u>Montella v. Berkheimer Associates,</u> 690 A.2d 802 (Pa. Cmwlth. 1997).   This reliance is misplaced.   <u>Montella</u> involved a suit against Berkheimer Associates for its collection of one-percent earned income taxes for certain townships, which tax was improperly collected from plaintiff's retirement benefits. <u>Id.</u> at 802-803.   Among other relief, plaintiff sought a declaratory judgment barring the collection of the taxes in the future. <u>Id.</u> The Commonwealth Court found that the political subdivisions were indispensable parties because in order to grant relief, it would be necessary for the Court to determine the validity of the tax as applied and collected and reasoned that the townships would be bound by any declaratory judgment entered in that action. <u>Id.</u>

The <u>Montella</u> case is distinguishable from the instant case, because Plaintiffs are not seeking a declaratory judgment that might bind the Commonwealth in the future.   They are simply seeking damages and an injunction against Walmart, which would prevent Walmart from improperly collecting the sales tax from its customers.

Based on the foregoing, the Commonwealth is not an indispensable party to this action. Its rights and interests are not so intertwined with the issues sought to be decided that they are indispensable.   In addition, the interests of the Commonwealth may be adequately protected in this action by its agent, Walmart.   As such, Walmart's preliminary objection must be denied.

**C. The Court Should Deny Defendant's Motion For Stay Based on the Doctrine of Primary Jurisdiction Since This Court Is Well-Equipped to Decide the Issues Raised In This Case**

In its third preliminary objection, Walmart argues that this Court should stay this action and require each of possibly tens of thousands of Plaintiffs to file a petition with the Department of Revenue for a refund of the taxes erroneously collected by Walmart.   Plaintiffs respectfully

submit that under the facts and circumstances of this case, this Court should deny Walmart's request for a stay.

The doctrine of "primary jurisdiction" was not developed to usurp a court's ability to hear the case. Rather, and only in appropriate circumstances, the doctrine is intended to give the court "the benefit of the agency's views on issues within the agency's competence." Feingold v. Bell of Pennsylvania, 477 Pa. 1, 383 A.2d 791, 798 (1977). As the Pennsylvania Supreme Court has noted:

> Courts should not be too hasty in referring a matter to an agency, or to develop a "dependence" on the agency whenever a controversy remotely involves some issue falling arguably within the domain of the agency's "expertise." "Expertise" is no talisman dissolving a court's jurisdiction. *Accommodation* of the judicial and administrative functions *does not* mean *abdication* of judicial responsibility. The figure of the so-called "expert" looms ominously over our society – too much so to permit the roles of the court and jury to be readily relinquished absent a true fostering of the purposes of the doctrine of primary jurisdiction.

Elkin v. Bell Telephone of Pennsylvania, 491 Pa. 123, 420 A.2d 371, 377 (1980) (emphasis in original). Where the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, then the Court must not abdicate its responsibility. Id.; Ostrov v. I.F.T., Inc., 586 A.2d 409 (Pa. Super 1991).[2]  Implicit in this admonition is the notion that a request for stay is addressed to the sound discretion of the Court. In such cases, it would be wasteful to employ a bifurcated procedure of referral, as no appreciable benefits would be forthcoming. Elkin, 420 A.2d at 378.

A Court must always balance the benefits of seeking an agency's aid with the need to resolve disputes fairly and expeditiously. However, Courts have cautioned that the doctrine

---

[2] Other federal courts, consistent with this obligation, have refrained from ordering stays on tax matters. E.g., Bowers v. Windstream Kentucky, LLC, 709 F. Supp. 2d 526, 533 (W.D. Ky. 2010) (Court can resolve issue of improper tax on its own, and thus no reason to stay based on primary jurisdiction doctrine); Tolar v. Allstate Texas Lloyd's Co., 772 F. Supp. 2d 825, 833-34 (N.D. Tex. 2011) (No great benefit to referring treatment of sales tax issue to state agency because it did not involve "particularly complex issues").

should be applied with reluctance because of the added expense and delay to litigants. <u>E.L.G.</u>

<u>Enterprises Corp. v. Gulf Oil Co.</u>, 435 A.2d 1295, 1297 (Pa. Super. 1981).

As early as 1936, Justice Cardozo noted:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

<u>Landis v. North American Co.</u>, 299 U.S. 248, 255-56, 57 S. Ct. 163, 166 (1936).

The Regulation at issue in this case is clear and unambiguous. The "guidance" of the

Department of Revenue need not be invoked, and is not necessary, to determine whether "the

item [purchased in a retail transaction] and the coupon [tendered in that transaction] are

**described** on a cash register receipt".[3]  The term "described" is not defined in either the Tax

Code or the tax regulations.  Therefore, one must turn to relevant rules of construction.

Section 1903 of the Pennsylvania Statutory Construction Act states:

> Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa.C.S.A. § 1903(a).[4]  Moreover, it is well established that tax statutes and regulations must be

construed strictly by a court, and any reasonable doubt as to their construction and application

must be resolved **in favor of the taxpayer**.  <u>See, e.g.</u>, <u>Tech One Associates v. Board of Property</u>

<u>Assessment</u>, 53 A.3d 685 (Pa. 2012); <u>Skepton v. Borough of Wilson</u>, 562 Pa. 344, 350, 755 A.2d

1267, 1270 (2000); <u>Commonwealth v. High Welding Co.</u>, 428 Pa. 245, 239 A.2d 377 (1968).[5]

---

[3]  61 Pa. Code § 33.2(b)(2).

[4]  The Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1501, <u>et seq.</u>, applies to the regulations promulgated pursuant to the Tax Code.  <u>See</u> 1 Pa. Code § 1.7.

[5]  <u>See also</u> 61 Pa. Code § 3.1(a) (The purpose of tax regulations is to provide taxpayers a clear understanding of their rights and duties under the law).

Applying these precepts here, the question to be answered is _not_ whether a tax is statutorily payable by the consumer. There is no dispute as to the taxability of the consumer items purchased by Class Members (e.g., shaving cream is taxable). Rather, as Walmart points out several times in its Brief, the salient inquiry is simply whether the coupon used on the taxable item is "described" on the receipt.[6] The taxable portion of the purchase price of an item must be reduced by the amount of any discount, including a "buy one, get one free" discount or a manufacturer's coupon, so long as "both the item and the coupon are described" on the cash register tape. 61 Pa. Code §33.2(b)(2). All that is required is a description – and not the complete identity of UPC Codes – of the item purchased and the coupon applied to that item.[7]

This Court does not require either expert testimony or "guidance" from the Department of Revenue to determine that the usual and ordinary meaning of the term "describe" is: "To give a verbal account of; to transmit a mental image or impression of words; **to outline**." American Heritage Dictionary (2d Ed.).[8] Nothing in the ordinary meaning of the term requires the detail or complete identity suggested by Walmart. Nor is there a need to stay the case while Plaintiff Farneth (and, as implied by Walmart, every Class Member) asks the Department to define a term which this Court can easily address on its own.

In addition, the Court's imposition of a stay in this case would be futile. Walmart suggests that before coming to this Court to seek redress, every Class Member must petition the Department and prove his or her entitlement to a refund. Assuming, _arguendo_, that the focus of

---

[6] It is also undisputed that, in all instances, Walmart "describes" the item purchased on the receipt, and properly designates it as either a taxable or nontaxable item.

[7] Even the "Tax Update" newsletter attached to Walmart's Motion does not mandate complete identity. At most, either a "clear reference to the item and the coupon related to it," or "a clear reference that there is an amount deducted on any purchase" is sufficient. While a newsletter does not rise to the level of an official proclamation, it certainly does not take precedence over the regulation itself. See 61 Pa. Code §3.5.

[8] See also Webster's Dictionary (2006) ("Describe" means to write or tell about, give an account of, or draw an outline of).

the refund inquiry is the "receipt" (as Walmart contends), and even assuming that every Class Member maintained all of their Walmart receipts for the last three years or more[9], <u>the key evidence which would allow the taxpayer to justify his or her refund to the Department was taken by Walmart at the time of the transaction</u>. Particularly if the Department's position (right or wrong) is that it cannot ascertain from the register tape whether or not a coupon applies to a particular taxable item, then the only way a consumer can prove entitlement to a refund is to produce the coupon used. Since Walmart took the coupon from the customer (and likely returned it to the manufacturer for a credit), Walmart has deprived the customer of the ability to seek the very remedy Walmart now promotes.

Thus, the rationale for the stay as identified in <u>Stoloff</u> and <u>Famous Dave's</u> is not applicable here. <u>Stoloff</u>, 24 A.3d at 366; <u>Johnson v. Famous Dave's</u>, C.A. 12-344 (E.D. Pa. 2012). First, neither of these cases involve the same regulation at issue here. In <u>Stoloff</u>, 24 A.3d 366, the question was whether a "black jersey dress," as described in the Neiman Marcus catalog, was considered non-taxable clothing or "formal apparel" under 72 P.S. § 7204(26), and in <u>Johnson</u>, C.A. 12-344 (E.D. Pa. 2012), the issue was whether a Philadelphia City Ordinance imposing a liquor tax was proper or excessive under the Pennsylvania "Sterling Act," 53 P.S. § 15971.

In both cases, the question was whether the goods and services were taxable *ab initio*. There is no such tax question here. Second, there was no argument raised in those cases as to the futility of a stay or refund petition, or the inability to present evidence in support of a petition because the evidence was taken (even unwittingly) by the Defendants. As such, on this issue, these cases are distinguishable from the instant case. The purposes behind the primary

---

[9] Of course, this is unlikely. Much more likely is that Walmart has the information, but it resists providing that information.

jurisdiction doctrine would not be furthered by imposing a stay in this particular matter and would cause unnecessary expense and delay in this matter.  As such, Walmart's request for a stay should be denied.

### D. Defendant's Request For Dismissal of Counts I-III and V Must Be Denied Because Plaintiffs Have Not Failed to Exhaust A Statutory Remedy

In Section D of its argument, Walmart argues that all counts of Plaintiffs Complaint, with the exception of the claim for unfair trade practices, must be dismissed for failure to exhaust an exclusive, adequate statutory remedy.  This argument is without merit.

Plaintiffs, as a class, raise the following claims:  Conversion (Count I), Breach of Constructive Trust (Count II), Unjust Enrichment (Count III), Unfair Trade Practices (Count IV), and Injunction (Count V).  Unless the Department of Revenue can fully address each of these class-wide claims, it is left to the courts to do so.  As noted by the Pennsylvania Superior Court:

> [T]he doctrine [of exhaustion of remedies] does not apply when the administrative remedy is incomplete.  Here, [the plaintiff] sought both injunctive relief and compensatory and punitive damages in Count I.  Since the Commission has no power to award damages to a private litigant in the position of [that plaintiff], it could not afford [the plaintiff] complete relief and he had no duty to exhaust.

Ostrov, 586 A.2d at 414.  Similarly, in the Stoloff case upon which Walmart relies in other sections of its brief, the Court held that because the plaintiffs were seeking statutory, injunctive and common law remedies, "relief which the Department [of Revenue] cannot grant," those claims had to be addressed by a court.  Stoloff, supra., 24 A.3d at 372.  The Court held that the trial court had erred in dismissing the complaint on the failure of plaintiffs to exhaust administrative remedies, because the overall complaint sought relief that the Department cannot grant.  Id.

Conversion (Count I of the Complaint) is a tort of strict liability.  E.g., Fort Washington Resources, Inc. v. Tannen, 846 F. Supp. 354, 362 (E.D. Pa. 1994); United States v. Northside

Deposit Bank, 569 F. Supp. 948, 957 (W.D. Pa. 1983) (Good faith or a mistake of law or fact are not defenses); Shonberger v. Oswell, 365 Pa. Super. 481, 530 A.2d 112 (1987).   Thus independent of **why** Walmart collected the money, or who currently holds the funds, Walmart took money belonging to others (the consumer Class Members) which it legally could not take, and must be held liable in its own right.[10]

Likewise, Count II of the Complaint (breach of constructive trust), as pled, implicates the relationship between the customer and Walmart – independent of the relationship between Walmart and the Commonwealth.   Count III (unjust enrichment) is directed expressly at Walmart's incentive to collect a 1% commission, in which Walmart alone holds a beneficial interest.

In Count IV (unfair trade practices), motive is again irrelevant.  Whether intended or not, if Walmart created a "likelihood of confusion or misunderstanding" by telling consumers, in essence, "you owe tax" when they really did not (particularly where Walmart was aware of the issue), this can constitute a statutory violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.  The determination of whether Walmart's acquisition of consumer money is deceptive is **not** within the purview of the Pennsylvania Department of Revenue.  The Department is only charged with the imposition, collection and refund of taxes. See 72 P.S. §7202(a), 72 P.S. §7237, 72 P.S. §7252.  Nowhere in the Sales Tax Code or in its regulations does the Department set forth **how** a vendor is supposed to disclose its withholding from a purchaser of sales tax.  The determination of the validity of UTPCPL claims is squarely within the purview of this Court and not of the Department. See Stoloff, 24 A.2d 366 at 372.

---

[10]   Akin to delivery of stolen property, it is not a defense for the recipient to claim he was told it was not stolen.  As long as the Defendant deprived the owner of property, the Defendant is liable.

Forcing Plaintiffs to seek a refund in lieu of recovery from Walmart does not negate Walmart's statutory liability for damages.

Finally, Count V (injunction), seeks to force Walmart to take action and provide prospective relief which this Court, but not the Department of Revenue, can grant. If nothing else, this Court, sitting in equity, can go to greater lengths to give relief, where to do so would be in furtherance of the public interest. Lemon, supra; Salem Engineering Co. v. National Supply Co., 75 F.Supp. 993 (W.D. Pa. 1948). Indeed, the Pennsylvania Supreme Court admonished:

> [W]here relying solely on the statutory appeal mechanism would result in a multiplicity of duplicative lawsuits and, in contrast, an action in equity would provide a tidy global resolution, the legal remedy should be deemed inadequate.

Kowenhoven v. County of Allegheny, 587 Pa. 545, 553, 901 A.2d 1003, 1008 (2006); Pentlong Corp. v. GLS Capital, Inc., 573 Pa. 34, 820 A.2d 1240 (2003) (administrative remedy must be full, perfect and complete to defeat equity jurisdiction).

In addition, as set forth in Section A above, this case is distinguishable from Lillian and Aldine Apartments, relied on by Walmart, where the only legal remedies sought by the plaintiffs were the refund of certain taxes that were improperly collected, which remedies were fully available by seeking a refund from the Department of Revenue. See, Lillian, 311 A.2d at 369; Aldine Apartments, 379 A.2d at 336.

The foregoing, coupled with the possibility that the Department's refund process frustrates the public policy favoring class actions, see Foust, supra.; Smolow v. Commonwealth, 131 Pa. Comm. 276, 570 A.2d 112 (1990), requires denial of Walmart's preliminary objection.

**E. The Court Must Deny Defendant's Demurrer To Count II of the Complaint Because A Constructive Trust Is Properly Imposed In This Matter**

Walmart's fifth preliminary objection is in the nature of a demurrer and is based on Walmart's assertion that the constructive trust sought by Plaintiffs in their Complaint is unavailable as a matter of law. This assertion is incorrect.

A constructive trust arises "(w)here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Kimball v. Barr Twp., 378 A.2d 366, 368-69 (Pa. Super. 1977), *citing*, A. Scott, Law of Trusts ss 462, 462.1 (3rd ed. 1967) (citations omitted). Our Supreme Court has repeatedly cited with approval the language of Justice Cardozo in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919):

> A constructive trust, it has often been said, is not really a trust at all but rather an equitable remedy. Like all remedies in equity, it is flexible and adaptable. Changing times and circumstances create different problems for society and, present new questions to the courts. An equity has never been reluctant to right injustices or to correct societal ills.

Id. at 368.

Moreover, a constructive trust may arise even though the acquisition of the property was not wrongful and the defendant's intention was not malign. Id. at 369. Our courts focus not on intention, but on the result of unjust enrichment. Id. There is no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; we must ascertain whether unjust enrichment can be avoided by imposing a constructive trust. Id.

In this case, Walmart improperly collected millions of dollars in sales tax from Plaintiff Farneth and other similarly situated by, *inter alia,* failing to take into account the reduction of the sales price attributable to a "buy one, get one free" coupon. 72 P.S. Section 7202 provides that

sales tax is imposed upon each separate sale of tangible personal property within the Commonwealth of Pennsylvania equal to 6% (7% in Allegheny County) of the "purchase price", which shall be collected by the vendor from the purchaser, but the regulations specifically exclude the amount of discounts attributable to coupons from the imposition of sales tax if both the item purchased and the coupon itself are described on the cash register tape.

Despite the mandate set forth in the regulations, Walmart improperly collected the tax and directly benefitted from the improper collection by retaining a commission of 1% of improperly charged taxes. 72 P.S. § 7227. As such, Walmart has an equitable duty to convey those funds to Plaintiffs on the ground that it would be unjustly enriched if it were permitted to retain the funds, and Plaintiffs are entitled to request that the Court impose a constructive trust with regard to these funds.

Walmart argues that a constructive trust is unavailable to Plaintiffs because it is improper to award equitable remedies that settle parties' rights in a manner contrary to the law governing those rights. The cases cited by Walmart are inapplicable to the instant matter. Each of these cases, Mid-State Bank & Trust Co. v. Globalnet Int'l, Inc. 735 A.2d 79, 87 (Pa. 1999), First Fed. Sav. & Loan Ass'n of Lancaster v. Swift, 321 A.2d 895, 897 (Pa. 1974), Cosby v. Cosby, 773 N.E.2d 516, 520 (Ohio 2002) and People ex rel. White v. Travnick, 806 N.E.2d 270, 279 (Ill. App. 2004), involve a situation in which the plaintiff is requesting that the court use its equitable powers to circumvent the clear mandate of a statute. That is not the situation here. The tax code does not provide, for example, that the 1% commission collected by Walmart be held in trust and unlike the sales tax collected on behalf of the Commonwealth, Walmart holds the improperly collected commission funds on its own behalf and is unjustly enriched by doing so. Moreover, there is no "clear mandate" in the statute or regulations requiring collection of full tax in

contravention of a regulation which is, at best, ambiguous and requires construction in favor of the taxpayers. Tech One Associates, supra. Based on the foregoing, Plaintiff has stated sufficient facts to support a cause of action for a constructive trust and Defendant's preliminary objections should be denied.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendant's Preliminary Objections and order the Defendant to file an answer to the Complaint within twenty (20) days.

ROTHMAN GORDON, P.C.

By:_____

Frank G. Salpietro, Esquire
Lori R. Miller, Esquire
Attorneys for Plaintiff

310 Grant Street, Third Floor
Pittsburgh, PA 15219
412-338-1185
FGSalpietro@rothmangordon.com



**pennsylvania**
DEPARTMENT OF REVENUE

**July 11, 2003 (Reissued July 11, 2008)**
**Pennsylvania Sales and Use Tax**
**No. SUT-03-038**
**Vendor Taking Credit For Erroneously Paid Sales Tax**
**(Revised November 18th, 2009)**

ISSUE

Is the vendor taxpayer permitted to take a credit on a subsequent sales and use tax return for sales tax erroneously collected and remitted to the Department?

CONCLUSION

Provided certain procedures are followed, the vendor taxpayer is permitted to take a credit on a subsequent sales and use tax return for sales tax erroneously collected and remitted to the Department.

FACTS

For the past two and a half years, the taxpayer has performed repair services on busses for ("Customer"). Taxpayer collected sales tax of approximately $16,000 and remitted that tax on its regular sales and use tax returns. Recently, Customer informed Taxpayer that the repair services were exempt from tax. Customer gave Taxpayer an exemption certificate. Customer also adjusted their balance due and owing to Taxpayer by subtracting the amount of sales tax previously paid.

ANALYSIS

You requested a ruling whether Taxpayer could adjust their next payment to the Department by taking a credit for the sales tax collected from Customer over the past two and a half years. Please be advised that Taxpayer can adjust their next payment to the Department, provided certain procedures are followed. Initially, the exemption certificate provided by Customer must be properly completed and disclose a valid exemption reason. Taxpayer must then issue a credit memorandum to Customer for the amount of sales tax previously collected. The credit memorandum must state that it is for erroneously collected sales tax. Taxpayer must also debit the sales tax account on the general ledger to reflect the credit memorandum. In addition, Taxpayer must be able to prove that Customer was reimbursed for the erroneously paid sales tax either by a cancelled check or a reduction in Customer's accounts receivable. Once these steps are completed and Taxpayer can completely document all of the required transactions, typically by keeping copies of the pertinent documents, Taxpayer may then take a credit on subsequent sales and use tax returns. The credit may only be taken against sales tax due, not use tax. Furthermore, the credit is available only for taxes overpaid in the three years prior to the date upon which the credit is taken. If Taxpayer has more credit than sales tax owed on a return, the sales tax should be zeroed out and the remaining credit may be used on subsequent returns until the credit is used in its entirety. If any of the above procedures are not followed, the Taxpayer may not take credit on any return and the proper procedure for the Customer to recover the sales tax erroneously paid is for Customer to file a Petition for Refund with the Department.

Office of Chief Counsel | POB 281061 | Harrisburg, PA 17128 | 717.787.1382 | www.revenue.state.pa.us

| DEPARTMENT OF REVENUE<br>BOARD OF APPEALS<br>DEPT 281021<br>HARRISBURG, PA 17128-1021 | **ASSIGNMENT OF RIGHTS**<br><br>**SALES/USE TAX REFUND** | <br>DBA 06 (4-02) (I) |

For value received, the undersigned, having authority to execute this assignment, does hereby assign and transfer to

_____          _____
(NAME)                                                          (ADDRESS)

all his, its, or their rights to Sales and Use Tax which may be refunded under Board Docket Number_____ . The undersigned further agrees that he, it, or they will not file a claim for refund for any Sales or Use Tax which is the subject of this assignment.

Dated: _____          _____
                                                                              (SIGNATURE)

**CORPORATE**                                          _____
**SEAL**                                                                 (TITLE)

                                                                       _____
                                                                              (SIGNATURE)

                                                                       _____
                                                                              (TITLE)

                                                                       _____
                                                                         (BUSINESS NAME)

**STATE OF**                               }
                                                    }   **SS.**
**COUNTY OF**                          }

On this, the _____ day of _____ , 20_____ before me _____ , the undersigned officer, personally appeared _____ known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
**My Commission Expires:**

EXHIBIT
tabbies
2

**Certificate of Service**

I hereby certify that a true and correct copy of the within Brief in Opposition to Defendant's Preliminary Objections has been served upon counsel of record via email and via first class mail at the address set forth below, this 18th day of April, 2014.

Thomas L. Allen, Esquire
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716

ROTHMAN GORDON, P.C.

By: _____
Frank G. Salpietro, Esquire

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

BRIAN FARNETH, on behalf of himself
and all others similarly situated,

       Plaintiffs,

v.

WALMART STORES, INC. t/d/b/a
Walmart,

       Defendant.

CIVIL ACTION – LAW

NO.: GD-13-11472

## **ORDER OF COURT**

AND NOW, this _____, day of May, 2014, following argument on Defendant's Preliminary Objections, it is hereby ORDERED, ADJUDGED and DECREED that Defendant's Preliminary Objections are DENIED.  Defendant must file an answer to Plaintiffs' Complaint within twenty (20) days of the date of this Order.

BY THE COURT:

_____
                         J.