## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER LISOWSKI, *on behalf of himself and all others similarly situated*, | ) ) ) ) | 2:20-cv-1729-NR |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| WALMART STORES, INC., t/d/b/a WALMART, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

Twice in the past two years, Plaintiff Christopher Lisowski went to Walmart to buy a six-pack of "5-Hour Energy" drinks. With each of these purchases, on top of the base price, Walmart charged Mr. Lisowski 94 cents in sales tax. Mr. Lisowski paid the tax, but later came to believe those charges were improper, because 5-Hour Energy is purportedly a "dietary supplement" not subject to sales tax in Pennsylvania. So he filed this class action, alleging that Walmart's incorrect assessment of sales tax violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and also amounts to conversion, unjust enrichment, and breach of a constructive trust. Walmart now moves to dismiss Mr. Lisowski's claims on several grounds.

Applying the familiar standard of Rule 12(b)(6), the Court will grant Walmart's motion and will dismiss this case with prejudice. Simply put, Mr. Lisowski's complaint suffers from two insurmountable flaws which, in tandem, cause all his claims to fail as a matter of law.

First, a retailer's incorrect assessment of sales tax is not conduct covered by the UTPCPL, which only regulates activity that is part of "the conduct of any trade

or commerce." 73 P.S. § 201-3(a).  When collecting sales tax, a retailer is not conducting "trade or commerce," even if such collection occurs in connection with a commercial transaction. Instead, because the Commonwealth requires retailers to collect sales tax on the Commonwealth's behalf, the retailer steps into the shoes of the Commonwealth and acts as a state agent, motivated by public duty rather than private gain.  Thus, while it is true that the UTPCPL extends broadly, as to regulate all manner of deceptive activity in the conduct of trade or commerce, it does not extend to regulate activity disconnected from the retailer's commercial interests, such as tax collection.  Mr. Lisowski's statutory claim fails for that reason.

Second, Mr. Lisowski's common-law claims are barred by the existence of an administrative procedure for consumers to obtain sales-tax refunds from the Pennsylvania Department of Revenue.  Pennsylvania law requires claimants to strictly pursue that statutory remedy, to the exclusion of any common-law relief, so long as it is constitutionally adequate.  Under the *Erie* doctrine, this is a substantive, rather than procedural, aspect of Pennsylvania law that applies in a federal court diversity action. What's more, the Pennsylvania Supreme Court has already held that the very same statutory refund procedures provide exclusive and adequate relief for any improper assessment of sales tax. *See Lilian v. Commonwealth*, 354 A.2d 250, 252 (Pa. 1976).  Because such relief is available to Mr. Lisowski, should he choose to pursue it, his common-law causes of action must also be dismissed.

For these reasons, discussed in full below, the Court will grant Walmart's motion, and dismiss Mr. Lisowski's complaint with prejudice.

## BACKGROUND[1]

Walmart is a multi-billion-dollar corporation that operates around 8,500 retail stores in 15 countries, including at least 131 Walmart and Sam's Club stores in Pennsylvania alone.  ECF 1-2, ¶ 2.  Among many other things, Walmart sells "5-Hour Energy" to customers in Pennsylvania and elsewhere.  *Id.* at ¶ 3.  5-Hour Energy is an energy drink, marketed as a "dietary supplement," that provides caffeine comparable to a cup of coffee, delivered in the form of an easily consumed "shot."  *Id.* at ¶¶ 3, 15.[2]  Bottles of 5-Hour Energy are labeled as "DIETARY SUPPLEMENTS," and Walmart sells them in the medicine, drug, and medical-supply section of its stores.  *Id.* at ¶ 15.

Plaintiff Christopher Lisowski lives in Pittsburgh, Pennsylvania.  *Id.* at ¶ 1.  On December 29, 2019, Mr. Lisowski entered a Walmart in Pittsburgh and bought a six-pack of 5-Hour Energy, among other things.  *Id.* at ¶ 5.  For that item, Walmart charged Mr. Lisowski the purchase price of $13.48, plus sales tax of $0.94.  *Id.* at ¶¶ 6-7.  The next year, Mr. Lisowski returned to the same Walmart and bought another six-pack of 5-Hour Energy.  *Id.* at ¶ 8. Once again, Walmart charged him sales tax of $0.94 on top of the base purchase price.  *Id.* at ¶ 9.

In Pennsylvania, retailers are required to collect sales tax, equal to 6-8% of the purchase price, on all sales of tangible, personal property.  *Id.* at ¶ 10; *see also* 72 P.S. § 7202.  But there are exceptions.  Both the statute and the related regulations promulgated by Pennsylvania's Department of Revenue exempt certain items from imposition of the tax.  ECF 1-2, ¶ 11.  Of relevance here, the Department of Revenue

---

[1] The Court draws the facts from the allegations in Mr. Lisowski's complaint, which the Court must accept as true for purposes of this motion to dismiss.

[2] *See also* "Regular Strength 5-hour Energy Shots," 5hourenergy.com, *available at* https://5hourenergy.com/faq/regular-strength-5-hour-energy-shot-faqs/ (last accessed July 27, 2021).

has publicly notified all retailers that "Dietary Supplements and Substitutes" are not subject to sales tax. *Id.* at ¶ 12. The Department also issued a "Retailer's Information" booklet that identifies "dietary supplements and substitutes, in any form" as exempt from sales tax in Pennsylvania. *Id.* at ¶ 13.[3]

Despite these directives regarding "dietary supplements," Walmart charged sales tax to Mr. Lisowski, and other similarly situated individuals, on purchases of 5-Hour Energy. *Id.* at ¶¶ 14, 17. This conduct forms the basis for all of Mr. Lisowski's statutory and common-law claims in the complaint.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the complaint." *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 113 (W.D. Pa. 2019) (Stickman, J.) (citation omitted). Such a motion "may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

To evade dismissal, the plaintiff must allege "sufficient factual matter to show that the claim is facially plausible" and permit a "reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (cleaned up). Allegations that are "conclusory or bare-bones," such as "threadbare recitals of the elements of a cause of action," will not suffice. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up). Even so, "detailed

---

[3] Walmart mentions in its motion that the Department separately advised retailers that energy drinks or shots of four ounces or greater *are* taxable under Pennsylvania law. ECF 16, p. 2. Because the taxability of 5-Hour Energy is ultimately not relevant to the grounds on which the Court resolves Walmart's motion, however, the Court need not, and does not, determine whether 5-Hour Energy is, in fact, taxable under Pennsylvania law. For now, the Court assumes Mr. Lisowski is correct that it is not.

pleading is not generally required." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Rather, the complaint need only contain a "short and plain statement" showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

The defendant bears the burden of establishing that the plaintiff has failed to plead a plausible claim for relief. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). When evaluating a defendant's motion to dismiss, the Court can only consider the allegations of the plaintiff's complaint, the exhibits attached to it, and any documents integral to or explicitly relied on by the complaint. *See Popa*, 426 F. Supp. 3d at 113 (citations omitted).

## DISCUSSION & ANALYSIS

Pennsylvania's Unfair Trade Practices and Consumer Protection Law arms consumers with a powerful weapon to wield against many kinds of unfair and deceptive practices. *See generally* 73 P.S. § 201-2(4)(i)-(xxi); 73 P.S. § 201-3. But like all statutory creations, the reach of that weapon is constrained by the statute's text. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) ("[W]ords are how the law constrains power.").

Of relevance here, the UTPCPL limits its application to unfair or deceptive activity "in the conduct of any trade or commerce." 73 P.S. § 201-3(a). In other words, the statute aims not at deception and unfairness generally, but at the particular evils of deception and unfairness in the commercial sphere—where greed, competition, and information asymmetry between buyers and sellers create unique opportunities for fraud and exploitation. *See Meyer v. Cmty. Coll. of Beaver Cty.*, 93 A.3d 806, 811 (Pa. 2014) ("Prior to the enactment of the UTPCPL, common law contract and warranty theories largely presumed that a consumer and merchant stand at arms-length in reaching their bargain, failing to recognize that the average consumer relies in great part on a merchant's advanced knowledge concerning the goods and services at issue,

and thus failed to protect against numerous unfair and deceptive business practices[.]" (citation omitted)); *see also Loduca v. Wellpet LLC*, No. 21-0954, 2021 WL 2948848, at *2 (E.D. Pa. July 13, 2021) ("The Pennsylvania Supreme Court has stated that the underlying foundation and purpose behind Pennsylvania's Consumer Protection Law was the prevention of fraud and protection of the public from unfair or deceptive business practices and to even the bargaining power between consumers and sellers in commercial transactions." (citations omitted)).

That limitation poses a problem for Mr. Lisowski.  As will be discussed, his UTPCPL claim fails because the conduct of which he complains here—incorrect charge of sales tax on the purchase of 5-Hour Energy—is not an act that Walmart engaged in as part of "the conduct of" its "trade or commerce."  Nor can Mr. Lisowski prevail on his common-law claims based on the same conduct.  Pennsylvania law precludes such claims when, as here, a statute provides an exclusive and adequate alternative remedy—in this case, an administrative procedure for Mr. Lisowski to obtain a full refund from the Department of Revenue.  For those reasons, the Court must dismiss Mr. Lisowski's entire complaint.

## I.    Mr. Lisowski's UTPCPL claim fails because the improper collection of sales tax is not an "act … in the conduct of any trade or commerce."

Beginning with the UTPCPL claim, Walmart argues that dismissal is required because the allegedly improper collection of sales tax is not an "act … in the conduct of any trade or commerce."  73 P.S. § 201-3(a).  The Court agrees.

Section 201-3(a) of the UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"  73 P.S. § 201-3(a).  The statute defines "[t]rade" and "commerce" to mean, in relevant part, "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate[.]"  73 P.S. § 201-2(3).  It then defines

unfair trade practices to include specific categories of conduct enumerated in Sections 201-2(4)(i)-(xx), as well as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi); *see also Loduca*, 2021 WL 2948848, at *2 ("By its statutory language, the UTPCPL declares that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce' are unlawful. 73 P.S. § 201-3. It goes on to provide a definition of some twenty-one 'unfair methods of competition' and 'unfair or deceptive acts or practices' in § 201-2(4)[.]"). Mr. Lisowski alleges that Walmart's conduct violates the final, catch-all category of this definition. 73 P.S. § 201-2(4)(xxi).[4]

There is no question that Walmart engages in "trade or commerce," as defined by the UTPCPL, when it sells products to consumers, including 5-Hour Energy. The dispositive question, then, is whether its collection of sales tax at the time of those sales is an "act … in the conduct of" that commercial activity. The Court finds that it is not.

No Pennsylvania appellate court has yet interpreted the UTPCPL's "trade or commerce" limitation in the context of a case alleging improper collection of sales tax.

---

[4] Mr. Lisowski's complaint also alleges that Walmart's conduct violates Section 201-2(4)(v), which defines unfair trade practices to include "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have[.]" 73 P.S. § 201-2(4)(v). Walmart moves to dismiss that aspect of his claim on the ground that he has not alleged an actionable "representation" by Walmart, and that any conceivable representation did not relate to the "characteristics" of the products being sold. Mr. Lisowski does not address this claim, respond to Walmart's arguments, or request leave to amend this claim, so the Court deems it to be forfeited. *See Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 506, n.8 (D.N.J. 2014) ("[F]ailure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed." (citations omitted)). But, in any event, this claim is subject to the same "trade or commerce" limitation discussed above, and so also fails on that basis.

Absent such authority, this Court looks to "federal cases interpreting state law" and "decisions from other jurisdictions that have discussed the issue" for guidance. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016).

Most recently, in *McLean v. Big Lots*, another judge in this District rejected a similar claim that improper collection of sales tax violates the UTPCPL. *See McLean v. Big Lots Inc.*, No. 20-2000, 2021 WL 2317417, at *4 (W.D. Pa. June 7, 2021) (Horan, J.). There, Judge Horan reasoned that the "collection of sales tax" was not an act "in the conduct of any trade or commerce" because tax collection is "divorced from private profit" and "[r]etailers ... collect sales tax on behalf of the Commonwealth's Department of Revenue" only "because state law requires them to do so." *Id.* at *4.

In reaching that conclusion, Judge Horan surveyed several relevant authorities. Preliminarily, she found persuasive the concurring opinion of the Pennsylvania Supreme Court's then-Chief Justice Castille in *Meyer v. Cmty. Coll. of Beaver Cty*, 93 A.3d 806, 815 (Pa. 2014) (Castille, C.J. concurring). There, Justice Castille expressed his view that a "governmental entity ... carrying out a public duty, ... is not engaged in the conduct of a trade or commerce, but in the conduct of government." *Id.* at 816 (citation omitted). Thus, he reasoned, conduct motivated by governmental duties fell outside the bounds of the UTPCPL. *See id.*

Judge Horan, in *McLean*, also examined decisions from courts in Massachusetts and Connecticut that addressed similar claims brought under statutes "nearly identical to the UTPCPL." *McLean*, 2021 WL 2317417, at *4. These other cases likewise concluded that the retailers' collection of sales tax did not fall within the realm of the applicable statutes.

In the first such case, *Feeney v. Dell,* the Massachusetts Supreme Judicial Court explained that determining whether sales-tax collection was an act "in the conduct of any trade or commerce" required a "more textured" analysis than simply considering whether a transaction "occurred in a business context." *Feeney v. Dell,*

*Inc.*, 908 N.E.2d 753, 770 (Mass. 2009).  The court in *Feeney* noted that, as here, the focus of the claims was "not on the transactions as a whole, but on a particular component of the transactions, the allegedly improper collection of sales tax[.]"  *Id.* That tax-collection component was, according to the court, distinct from the sale itself in a crucial respect.  That is, "Dell remitted the proceeds from the tax collected to the Commonwealth—rather than retaining them for its own enrichment[.]"  *Id.* at 771. As a result, the court determined that Dell had not collected sales tax for "business or personal reasons," as required to support a claim under the Massachusetts unfair-trade-practices statute, but had done so only "pursuant to legislative mandate."  *Id.*

Similarly, in *Blass v. Rite Aid of Connecticut,* a Connecticut trial court—in a decision later affirmed and adopted on appeal[5]—explained that the "trade or commerce" limitation in Connecticut's equivalent statute reflected an intent to ensure that claims were "consistent with the regulatory principles established by the underlying statute."  *Blass v. Rite Aid of Connecticut, Inc.*, 16 A.3d 855, 863 (Conn. Super. Ct. 2009) (cleaned up), *aff'd*, 16 A.3d 737 (Conn. App. 2011).  The court then concluded that sales-tax collection fell outside the bounds of the statute, because "[a] retailer gains no personal benefit from the overcollection of taxes," and, in fact, "such activity only increases the retailer's prices, working against its economic interest." *Id.*  The court also held that the defendant's collection of sales tax "was not commercial because when it collected the plaintiff's money for taxes, it did so as an agent of the State."  *Id.*

Mr. Lisowski, for his part, does not direct the Court to any reasoned decision— by any court—interpreting the UTPCPL (or a similar statute) as regulating sales-tax

---

[5]  The trial court's reasoning was adopted by the appeals court as its own. *See Blass v. Rite Aid of Connecticut, Inc.*, 16 A.3d 737, 739 (Conn. App. 2011) ("[B]ecause the court's thorough and well reasoned memorandum of decision correctly and concisely addresses the issues raised in the present appeal, we adopt it as a proper statement of the law and applicable facts on the issues[.]" (citation omitted)).

collection or, for that matter, any other acts motivated by legal duty rather than commercial interests.  At best, he points to a few examples of one Pennsylvania trial court denying preliminary objections, without an accompanying opinion, in a handful of copycat state-court cases that his counsel has recently filed.  *See* ECF 50, p. 6.[6]  He also points to an unpublished opinion in *Farneth v. Walmart Stores*, where a Pennsylvania trial court granted class certification on a similar claim, but did not address the UTPCPL's "trade or commerce" limitation or otherwise decide the case on its merits.  *See generally* ECF 36-1.  The Court finds these decisions to be of little help in answering the question at hand, which is whether sales-tax collection falls within the scope of the UTPCPL.

It is clear, then, that the weight of what precedent exists favors Walmart's interpretation of the statute.  Moreover, Pennsylvania law provides that, as a general principle of statutory interpretation, "[s]tatutes uniform with those of other states shall be interpreted and construed … to make uniform the laws of those states which enact them."  1 Pa. C.S. § 1927.  Thus, interpretations of nearly identical statutes in other states, such as those in Massachusetts and Connecticut discussed above, are entitled to greater persuasive weight here than usual.  Indeed, all of these consumer protection statutes are patterned after the federal unfair trade practices act.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) (explaining that  all fifty states "provide causes of action for unfair or deceptive trade practices, most of which are based on the Federal Trade Commission Act ('FTCA')," including statutes, like Pennsylvania's, which "prohibi[t] … 'unfair methods of

---

[6] The cases cited by Mr. Lisowski are: *Lisowski, et al. v. Giant Eagle, Inc.*, GD-20-010525 (Allegheny Cty. Ct. Com. Pl. Jan. 12, 2021) (Ignelzi, J.); *Barger, et al. v. Target Corp., Inc.*, GD-20-10606 (Allegheny Cty. Ct. Com. Pl. Jan. 12, 2021) (Ignelzi, J.); *Garcia, et al. v. Am. Eagle Outfitters, Inc., et al.*, GD-20-11057 (Allegheny Cty. Ct. Com. Pl. June 9, 2021) (Ignelzi, J.).

competition' and 'unfair or deceptive acts or practices' in or affecting commerce, a formulation identical to the FTCA's prohibition …").

Of course, this Court is not bound to follow either *McLean* or the decisions of the Massachusetts and Connecticut state courts. But the Court finds these decisions to be persuasive and consistent with the statutory text.

In response, Mr. Lisowski makes two arguments—neither of which is ultimately persuasive. First, he makes an attenuated argument based on a different Pennsylvania statute, the Fair Credit Extension Uniformity Act, which regulates debt collection activity. The argument goes something like this: (1) The FCEUA classifies taxes owed to political subdivisions of the Commonwealth (though not taxes owed to the Commonwealth itself) as "debt[s]" subject to the FCEUA's regulations, 73 P.S. § 2270.3; (2) The legislature decreed that violations of the FCEUA shall amount to violations of the UTPCPL, in effect making the FCEUA enforceable through the UTPCPL, 73 P.S. § 2270.5; (3) Therefore, the Court should infer that the legislature understood tax collection by government agents to constitute activity "in the conduct of trade or commerce" subject to the UTPCPL. *See, e.g.,* ECF 36, pp. 11-12; ECF 45, p. 7; ECF 50, p. 2.

This argument is unpersuasive. Unlike the UTPCPL, the FCEUA does not contain any "trade or commerce" limitation, and thus does not imply a legislative judgment or understanding that municipal tax collection (or anything else regulated by the FCEUA) is a commercial activity. Rather, the FCEUA simply declares that an *additional* category of conduct (*e.g.*, deceptive acts by for-profit municipal debt collectors) should *also* be actionable under the UTPCPL, whether such conduct is "commercial" or not. *See* 73 P.S. § 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act … known as the Unfair Trade Practices and Consumer Protection Law."). If anything, the legislature's decision to enact a new law subjecting

a particular type of tax collection activity to the UTPCPL suggests that it *did not* believe such conduct was already regulated by that statute. Conversely, the legislature's decision to *exclude* taxes owed to the Commonwealth from the FCEUA's ambit is an indication that it *did not* intend for the collection of such taxes by retailers, as opposed to for-profit municipal debt collectors, to be subject to the same treatment. *See* 73 P.S. § 2270.3; *Mohamed v. Com. Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1194–95 (Pa. 2012) ("…[A] court may not add matters the legislature saw fit not to include under the guise of construction." (citation omitted)).

Second, Mr. Lisowski also argues—or at least alludes to—an alternative theory to support his UTPCPL claim. He claims that Walmart was engaged in "trade or commerce" because, until August 1, 2016, it received a tax credit equal to 1% of all sales tax collected from each consumer, and thus profited from its tax-collection activity. *See, e.g.,* ECF 36, pp. 2, 8; ECF 50, p. 8. There is no dispute that the law changed in August 2016 to provide retailers with, in effect, a flat $25-per-month tax credit, no matter how much tax they collect. *See* 72 P.S. § 7227. But before the change in the law, Walmart had a plausible incentive to improperly collect a tax because it would receive a percentage-based tax credit from the Commonwealth.

This argument has some facial appeal. For example, the court in *Feeney*, discussed above, considered the profit motive of the retailer in determining whether it was conducting "trade or commerce." *See Feeney*, 908 N.E.2d at 771 ("[S]uch an allegation could conceivably state a claim … to the extent that it demonstrated a profit-seeking motive for the collection of the tax. Where, as here, the plaintiffs made no such allegation in their complaint, dismissal is warranted."). Ultimately, however, this Court finds this "kickback" theory to be irrelevant. Even if Walmart could "profit"—*i.e.*, essentially commit some type of tax fraud by obtaining a credit to which it wasn't entitled—that doesn't change the fact that at all times Walmart was acting

in its capacity as an agent of the Commonwealth.  Walmart was the Commonwealth's tax collector, not a merchant engaged in commerce.[7]

Simply put, a retailer cannot be fairly said to collect sales tax as part of (or "in the conduct of") its "trade or commerce," because retailers wear a different hat when collecting taxes from the one they wear when they market and sell their products. Instead, "[v]endors who collect sales tax ... act as agents of the Commonwealth." *Gray v. Commonwealth*, 714 A.2d 1124, 1125 (Pa. Commw. Ct. 1998).  Like any agent, they "stand in the place of their principal[]" and are indistinguishable from the Department of Revenue itself when performing that function.  *Hooker v. Wanigas Credit Union*, 835 F. App'x 110, 112 (6th Cir. 2021) (cleaned up); *see also Great Am. Ins. Co. of New York v. Lowry Dev., LLC*, 576 F.3d 251, 257 (5th Cir. 2009) ("Once an agency relationship is created, the agent steps into the shoes of his or her principal and has the authority to transact business on the principal's behalf." (cleaned up)); *cf. Johnson v. Johnson*, 332 F. Supp. 510, 513 (E.D. Pa. 1971) ("Iowa Medical Service thus stands, for purposes of *paying* claims, in the shoes of the governmental agency, enjoying no greater discretion than that of the agency." (emphasis in original)).

As a result, when engaged in collecting sales tax, retailers are no different from a "government entity" that is "carrying out a public duty" directly.  *Meyer*, 93 A.3d at 816 (Castille, C.J. concurring).  That is, they are "not engaged in the conduct of a trade or commerce, but in the conduct of government."  *Id.* (citation omitted).  And they do not reap any profits or other tangible benefits for carrying out their legal duty to collect tax.  Instead, they are required to "hold the tax in trust before remitting to the Commonwealth," and they "realiz[e] no increase in revenue or profit in a

---

[7] Even if Mr. Lisowski's "kickback" theory were otherwise well taken, his claim would still face fatal obstacles.  Most evident, it would limit the timeframe of the conduct in this case to pre-August 1, 2016, sales—but Mr. Lisowski hasn't alleged that he purchased any 5-Hour Energy drinks before 2016, let alone that he was improperly charged sales tax on such.

transaction that charges a sales tax." *McLean*, 2021 WL 2317417, at *4. In fact, collecting sales tax "increases the retailer's prices, working against its economic interest." *Blass*, 16 A.3d at 863. Retailers persist in collecting it only because refusal to do so could subject them to suspension or revocation of their business license. *See* 72 P.S. § 7208(b.1).

Given these considerations, "common sense dictates that the collection and remittanc[e] of sales tax has little to do with profit and revenue," and is instead compelled by "basic compliance with the law." *McLean*, 2021 WL 2317417, at *4 n.2. The Court thus concurs with the reasoning of *McLean, Feeney,* and *Blass*, and holds that the collection of sales tax by retailers, acting as agents of state government, is an activity "divorced from private profit" that does not occur "in the conduct of any trade or commerce." *Id.* at *4. For that reason, Mr. Lisowski's UTPCPL claim fails as a matter of law.

## II. Mr. Lisowski's common-law claims are barred by 1 Pa. C.S. § 1504, because an exclusive and adequate remedy is provided by statute.

In addition to his statutory claim, Mr. Lisowski asserts common-law claims for conversion, unjust enrichment, and breach of constructive trust. The Court need not address the sufficiency of these claims individually, because all fail for the same reason—Pennsylvania law provides that Mr. Lisowski's exclusive remedy is to request a refund of improperly collected sales tax from the Department of Revenue.

Section 1504 of the Pennsylvania Statutory Construction Act provides that "[i]n all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect." 1 Pa. C.S. § 1504. In practice, this means that "if the legislature provides a specific, [e]xclusive, constitutionally adequate method for the disposition of a particular kind of dispute,

no action may be brought … to adjudicate the dispute by any kind of 'common law' form of action other than the exclusive statutory method." *Lilian v. Commonwealth*, 354 A.2d 250, 253 (Pa. 1976) (quoting *Sch. Dist. of Borough of W. Homestead v. Allegheny Cty. Bd. of Sch. Directors*, 269 A. 2d 904, 907 (Pa. 1970)); *see also White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 729 (Pa. 2012) ("[W]hen a statute articulates a remedy for the breach of a statutory obligation, that remedy is exclusive and must be strictly pursued to the exclusion of all 'civil action remedies' seeking relief for the harm that results from an alleged breach of that obligation.").

Walmart contends that such a remedy exists for Mr. Lisowski.  But before considering whether a statutory remedy bars Mr. Lisowski's claim, the Court must first pause to consider whether this rule applies in federal court at all.

### A.    Pennsylvania's statutory-remedy rule is substantive law that applies in federal court.

Federal jurisdiction under the Class Action Fairness Act, or CAFA,  "is, at base, an extension of diversity jurisdiction." *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010). "Therefore the normal rules for analyzing diversity jurisdiction apply to CAFA cases." *Rivers v. Chalmette Med. Ctr., Inc.*, 805 F. Supp. 2d 291, 295 (E.D. La. 2011).  This includes the ordinary rule that "federal courts sitting in diversity apply state substantive law and federal procedural law." *Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, No. 16-3103, 2017 WL 714043, at *11 (E.D. Pa. Feb. 23, 2017); *see, e.g., Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) ("Because CAFA is based on diversity jurisdiction, state substantive law governs the determination of whether Audler's petition states a claim for relief.").

"Whether a state rule is substantive or procedural involves a two step analysis." *King v. E.I. DuPont De Nemours & Co.*, 741 F. Supp. 2d 699, 702 (E.D. Pa. 2010) (citations omitted). "First, the Court must determine whether the state rule is in direct conflict with a Federal Rule of Civil Procedure." *Id*.  If it is, that ends the

analysis, and the federal rule applies. *Id.* Here, Section 1504 does not directly conflict with any Federal Rule of Civil Procedure, so the Court turns to the second part of this analysis.

In the absence of a direct conflict between the state and federal rules, "the court considers the twin aims" of the so-called "*Erie* doctrine," which are "discouragement of forum shopping and avoidance of inequitable administration of the laws." *Id.* Courts also consider whether the state rule at issue is "outcome determinative"—that is, a rule is more likely to be substantive, rather than procedural, if applying or refusing to apply it "significantly affects the result of a litigation[.]" *Edelson v. Soricelli*, 610 F.2d 131, 134 (3d Cir. 1979) (citation omitted).

Before delving into the *Erie* doctrine's "twin aims," the Court notes that as to Section 1504's statutory-remedy rule, the Pennsylvania Supreme Court's precedent is somewhat murky about its exact nature and, specifically, whether it creates a "jurisdictional" or "non-jurisdictional" requirement. *See White*, 53 A.3d at 726 n. 11 ("In *School Dist. of Borough of West Homestead v. Allegheny* ... we suggested that Section 1504 is jurisdictional[.] ... However, in other cases, we have characterized the doctrine of administrative exhaustion as jurisprudential, *i.e.*, a rule that does not divest a court of subject matter jurisdiction, but, rather, serves as a prerequisite to the court's exercise of its subject-matter jurisdiction.").

One thing is clear, however—whether jurisdictional or not, Section 1504 is, at bottom, a "rule of exhaustion" that relates to, and "works in concert" with, the broader, judicially created doctrine of "exhaustion of administrative remedies." *Id.* at 726 n.10. Understanding Section 1504 as an exhaustion requirement is helpful here, as many courts have considered whether exhaustion requirements are "substantive," and they have overwhelmingly concluded that they are.

Of course, "the line between substance and procedure can be a murky one, and exhaustion requirements are among those matters which, though falling within the

uncertain area between substance and procedure, are rationally capable of classification as either." *Lamar Co., L.L.C. v. Mississippi Transp. Comm'n*, 786 F. App'x 457, 460 (5th Cir. 2019) (cleaned up). That said, when analyzed in the context of the *Erie* doctrine's "twin aims," courts have broadly concluded that the best course is to "treat administrative exhaustion as substantive for *Erie* purposes and therefore apply [state] law." *Id.*; *see Sani-Dairy v. Yeutter*, 782 F. Supp. 1060, 1069 (W.D. Pa. 1991) (Brooks Smith, J.) ("In other words, the requirement of exhaustion of remedies is substantive."); *Lauwrier v. Garcia*, No. 12-7381, 2013 WL 11238497, at *6 (C.D. Cal. Mar. 8, 2013) ("A state statute relegating particular state law claims to an administrative forum is substantive law."); *see, e.g., Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 115, n.9 (D.D.C. 2012) ("The Court notes that under the broad command of *Erie* ... federal courts are to apply state substantive law and federal procedural law when sitting pursuant to their diversity jurisdiction. ... The WCA and the D.C. Court of Appeals' construction of this law [to include an exhaustion requirement] are therefore binding on this Court.") (cleaned up)).[8]

More precisely, as these courts have reasoned, *Erie*'s "twin aims" of discouraging forum-shopping and avoiding inequitable administration of law heavily favor treating exhaustion requirements as substantive, because: (1) "[l]itigants would

---

[8] *See also, e.g., U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1133 (9th Cir. 2011) ("[T]he California Workers' Compensation Act's exclusivity provisions are 'substantive' provisions which, under *Erie*, a district court sitting in diversity is bound to follow." (cleaned up)); *Zapata v. Colorado Christian Univ.*, No. 18-2529, 2019 WL 1544179, at *4 (D. Colo. Mar. 15, 2019) ("[T]his court must apply CADA's exhaustion requirements even though Plaintiff filed suit in federal court rather than state court."); *Jones v. Deaconess Billings Clinic*, No. 06-15, 2008 WL 5435956, at *4 (D. Mont. July 14, 2008) ("The required exhaustion of the Montana Medical Legal Panel is a substantive provision which under Erie this Court is bound to follow."); *White v. Lavigne*, 741 F.2d 229, 230 (8th Cir. 1984) ("To waive the exhaustion requirement in the case at bar for plaintiffs suing in diversity would contravene the policies underlying the *Erie* doctrine. Other courts have required exhaustion of administrative remedies in similar circumstances for the reasons discussed above.").

engage in forum shopping if federal courts and state courts applied different administrative exhaustion regimes, because some claims could proceed in one court system but not the other"; and (2) "it would be unfair for non-diverse litigants to be able to proceed in state court when diverse but otherwise identically situated litigants could not proceed because their case was in federal court." *Lamar Co.*, 786 F. App'x at 460. The same goes here. Additionally, Section 1504 is likely to be outcome determinative in any case in which its rule applies, *i.e.*, when a plaintiff fails to pursue an available statutory remedy that is specific, exclusive, and constitutionally adequate to redress the plaintiff's alleged harm. *See Edelson*, 610 F.2d at 134.

Thus, when analyzed in the context of *Erie*'s "twin aims," Section 1504's "rule of exhaustion" is a substantive, rather than procedural, requirement that applies in a federal court diversity action. As such, applying Section 1504, noncompliance with any specific, exclusive, and adequate remedy provided by another Pennsylvania statute compels dismissal of any common-law cause of action for failure to state a claim—even if Section 1504 is non-jurisdictional. *Cf. Wesolowski v. United States*, No. 117-749, 2017 WL 3720197, at *7 (S.D. Ind. Aug. 28, 2017) ("Indiana thus subscribes to the Seventh Circuit's position that failure to exhaust administrative remedies does not deprive a court of jurisdiction. … The Court therefore clarifies that dismissal of Count II of Mr. Wesolowski's Complaint is required for failure to state a claim and not for lack of subject matter jurisdiction."); *Lockhart*, 905 F. Supp. 2d at 115, n.9 ("Instead, for Federal courts sitting in diversity jurisdiction, the exhaustion requirement is prudential rather than jurisdictional, and the plaintiff has in fact 'failed to state a claim on which relief may be granted' with respect to the unexhausted claim or claims by failing to demonstrate that a necessary precondition to judicial review of those claims has been satisfied." (cleaned up)).

The Court will therefore go on to consider whether Pennsylvania does, in fact, provide an exclusive and adequate statutory remedy for the harm Mr. Lisowski

alleges in this case.  If it does, Mr. Lisowski must strictly pursue that remedy, to the exclusion of any common-law relief.

### B. Pennsylvania provides an exclusive and adequate statutory remedy for the harm of which Mr. Lisowski complains.

Walmart argues that Mr. Lisowski's exclusive remedy is to petition the Pennsylvania Department of Revenue for a refund of any improperly collected sales tax.  Such refunds are mandated by the Pennsylvania Tax Reform Code, which states that the Department of Revenue "shall … refund all taxes, interest and penalties paid to the Commonwealth under the provisions of this article and to which the Commonwealth is not rightfully entitled."  72 P.S. § 7252.  To obtain such a refund, "a taxpayer who has actually  paid  tax  ...  to  an  agent  or  licensee  of  the Commonwealth   authorized  to  collect  taxes[,]  may  petition  the  Department  of Revenue for refund or credit of the tax, interest  or  penalty."  72 P.S. § 10003.1(a).

Together, these provisions establish a clear procedure for individual taxpayers to obtain refunds of sales tax improperly collected by the Commonwealth or its agents—the taxpayer need only file a petition with the Department of Revenue. Indeed, Mr. Lisowski alleges in his complaint that the Department of Revenue has already refunded sales tax charged to certain individuals on purchases of 5-Hour Energy, ECF 1-2, ¶¶ 16(a)-(d), and that the Department did not appeal a previous decision by its review board that such refunds were appropriate.  *Id.* at ¶ 16(c).  Thus, in both theory and practice,  Pennsylvania has provided by statute a remedy for those who are incorrectly charged sales tax on a purchase.

The only remaining question, then, is whether this remedy is "exclusive" and "constitutionally adequate."  *Lilian v. Commonwealth*, 354 A.2d 250, 253 (Pa. 1976). As it turns out, the Pennsylvania Supreme Court has already considered this precise issue, and determined that these tax-refund procedures provide an exclusive and adequate remedy for improper assessments of sales tax.  *See id.* at 252 ("Tax Reform

Code of 1971, … 72 P.S. §§ 7252-7255 … provide for the refunding of improperly assessed or paid sales taxes, and set forth the procedure whereby such refunds may be obtained. … Where such an administrative remedy is statutorily prescribed the general rule is that a court … is without jurisdiction to entertain the action.  Strict compliance with the statutory procedure … is the norm." (citing 1 Pa. C.S. § 1504)). Moreover, Section 10003.1, cited above, makes clear that these refund procedures apply to taxes collected by the Commonwealth's "agents," such as Walmart, and not just by the Commonwealth itself.  72 P.S. § 10003.1(a).

That ends the inquiry.  *See State Farm Mut. Auto. Ins. Co. v. Coviello*, 233 F.3d 710, 713 (3d Cir. 2000) ("When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are … the authoritative source."). In sum, because Pennsylvania provides an adequate statutory remedy for improperly collected sales tax, Section 1504 requires Mr. Lisowski to resort to that remedy, to the exclusion of any common-law relief.

The Court will thus dismiss all of Mr. Lisowski's common-law claims.

## CONCLUSION

For all the reasons discussed above, Walmart's motion to dismiss will be granted.[9]

Additionally, since the bases for the Court's decision relate to purely legal defects in the complaint, rather than factual ones, the Court finds that any amendment of the complaint here would be futile; the Court will therefore dismiss

---

[9] Because all of Mr. Lisowski's claims fail on the grounds discussed above, the Court need not, and does not, consider the other arguments Walmart makes in its motion to dismiss, *e.g.,* (1) that Mr. Lisowski's claims are barred by the voluntary-payment doctrine; or (2) that Mr. Lisowski has failed to allege deceptive conduct or justifiable reliance to support his UTPCPL claim.  The Court notes that Walmart withdrew its argument that Mr. Lisowski's claims are barred by the "economic loss" doctrine following the Third Circuit's recent decision in *Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021).  ECF 39.

the complaint with prejudice. *See, e.g., Est. of Tyler ex rel. Floyd v. Grossman*, 108 F. Supp. 3d 279, 297, n.7 (E.D. Pa. 2015) ("The Court has determined that amendment would be futile on all claims dismissed thus far as the Estate cannot state these claims as a matter of law—amendment would be of no assistance.").

An appropriate order follows.

DATE: August 4, 2021                                  BY THE COURT:

                                                     */s/ J. Nicholas Ranjan*
                                                     United States District Judge